# BECK *v.* ALABAMA

No. 78–6621.   Argued February 20, 1980—Decided June 20, 1980

STEVENS, J., delivered the opinion of the Court, in which BURGER, C. J., and BRENNAN, STEWART, BLACKMUN, and POWELL, JJ., joined. BRENNAN, J., filed a concurring opinion, *post*, p. 646. MARSHALL, J., filed an opinion concurring in the judgment, *post*, p. 646. REHNQUIST, J., filed a dissenting opinion, in which WHITE, J., joined, *post*, p. 646.

*David Klingsberg* argued the cause for petitioner. With him on the briefs were *John A. Herfort, Jay Wishingrad,* and *John L. Carroll.*

*Edward E. Carnes,* Assistant Attorney General of Alabama, argued the cause for respondent. With him on the brief was *Charles A. Graddick,* Attorney General.

MR. JUSTICE STEVENS delivered the opinion of the Court.

We granted certiorari to decide the following question:

"May a sentence of death constitutionally be imposed after a jury verdict of guilt of a capital offense, when the jury was not permitted to consider a verdict of guilt of a lesser included non-capital offense, and when the evidence would have supported such a verdict?" 444 U. S. 897.

We now hold that the death penalty may not be imposed under these circumstances.

Petitioner was tried for the capital offense of "[r]obbery or attempts thereof when the victim is intentionally killed by the defendant." [1] Under the Alabama death penalty statute

---

[1] There are 14 capital offenses under the Alabama statute, Ala. Code §§ 13-11-2 (a)(1)-(14) (1975):

"(1) Kidnapping for ransom or attempts thereof, when the victim is intentionally killed by the defendant;

"(2) Robbery or attempts thereof when the victim is intentionally killed by the defendant;

"(3) Rape when the victim is intentionally killed by the defendant; carnal knowledge of a girl under 12 years of age, or abuse of such girl in an attempt to have carnal knowledge, when the victim is intentionally killed by the defendant;

"(4) Nighttime burglary of an occupied dwelling when any of the occupants is intentionally killed by the defendant;

"(5) The murder of any police officer, sheriff, deputy, state trooper or peace officer of any kind, or prison or jail guard while such prison or jail guard is on duty or because of some official or job-related act or performance of such officer or guard;

"(6) Any murder committed while the defendant is under sentence of life imprisonment;

"(7) Murder in the first degree when the killing was done for a pecuniary or other valuable consideration or pursuant to a contract or for hire;

"(8) Indecent molestation of, or an attempt to indecently molest, a child under the age of 16 years, when the child victim is intentionally killed by the defendant;

"(9) Willful setting off or exploding dynamite or other explosive under

the requisite intent to kill may not be supplied by the felony-murder doctrine.[2] Felony murder is thus a lesser included offense of the capital crime of robbery-intentional killing. However, under the statute the judge is specifically prohibited from giving the jury the option of convicting the defendant of a lesser included offense.[3] Instead, the jury is given the

circumstances now punishable by section 13-2-60 or 13-2-61, when a person is intentionally killed by the defendant because of said explosion;

"(10) Murder in the first degree wherein two or more human beings are intentionally killed by the defendant by one or a series of acts;

"(11) Murder in the first degree where the victim is a public official or public figure and the murder stems from or is caused by or related to his official position, acts or capacity;

"(12) Murder in the first degree committed while the defendant is engaged or participating in the act of unlawfully assuming control of any aircraft by use of threats or force with intent to obtain any valuable consideration for the release of said aircraft or any passenger or crewman thereon, or to direct the route or movement of said aircraft, or otherwise exert control over said aircraft;

"(13) Any murder committed by a defendant who has been convicted of murder in the first or second degree in the 20 years preceding the crime; or

"(14) Murder when perpetrated against any witness subpoenaed to testify at any preliminary hearing, trial or grand jury proceeding against the defendant who kills or procures the killing of witness, or when perpetrated against any human being while intending to kill such witness."

[2] Alabama Code § 13-11-2 (b) (1975) states that "[e]vidence of intent under this section shall not be supplied by the felony-murder doctrine." In *Ritter* v. *State,* 375 So. 2d 270, 275 (1979), cert. pending, No. 79-5741, the Alabama Supreme Court held that the State could not satisfy its burden of proof under the new death penalty statute simply by showing that the defendant intended to commit robbery or even by showing that he should have known that there was a substantial possibility that someone would be killed. Although the State is not required to prove that the defendant was the actual triggerman, it must show that he had a "particularized intent" to kill the victim or that he "sanctioned and facilitated the crime [of intentional killing] so that his culpability is comparable to that of" the actual killer.

[3] Alabama Code § 13-11-2 (a) (1975) provides:

"If the jury finds the defendant guilty, it shall fix the punishment at death when the defendant is charged by indictment with any of the

choice of either convicting the defendant of the capital crime, in which case it is required to impose the death penalty, or acquitting him, thus allowing him to escape all penalties for his alleged participation in the crime. If the defendant is convicted and the death penalty imposed, the trial judge must then hold a hearing with respect to aggravating and mitigating circumstances; after hearing the evidence, the judge may refuse to impose the death penalty, sentencing the defendant to life imprisonment without possibility of parole.[4]

In this case petitioner's own testimony established his participation in the robbery of an 80-year-old man named Roy Malone. Petitioner consistently denied, however, that he killed the man or that he intended his death. Under petitioner's version of the events, he and an accomplice entered

---

following offenses and with aggravation, which must also be averred in the indictment, and which offenses so charged with said aggravation shall not include any lesser offenses."

The last phrase of this subsection has been consistently construed to preclude any lesser included offense instructions in capital cases. See *Jacobs* v. *State*, 361 So. 2d 640, 646 (Ala. 1978) (Torbert, C. J., concurring in part and dissenting in part), cert. denied, 439 U. S. 1122; *Evans* v. *Birtton*, 472 F. Supp. 707, 714 (SD Ala. 1979).

[4] Alabama Code § 13–11–3 (1975) provides:

"If the jury finds the defendant guilty of one of the aggravated offenses listed in section 13–11–2 and fixes the punishment at death, the court shall thereupon hold a hearing to aid the court to determine whether or not the court will sentence the defendant to death or to life imprisonment without parole. In the hearing, evidence may be presented as to any matter that the court deems relevant to sentence and shall include any matters relating to any of the aggravating or mitigating circumstances enumerated in sections 13–11–6 and 13–11–7. Any such evidence which the court deems to have probative value may be received, regardless of its admissibility under the exclusionary rules of evidence, provided that the defendant is accorded a fair opportunity to rebut any hearsay statements; provided further, that this section shall not be construed to authorize the introduction of any evidence secured in violation of the Constitution of the United States or the state of Alabama. The state and the defendant, or his counsel, shall be permitted to present argument for or against the sentence of death."

their victim's home in the afternoon, and, after petitioner had seized the man intending to bind him with a rope, his accomplice unexpectedly struck and killed him. As the State has conceded, absent the statutory prohibition on such instructions, this testimony would have entitled petitioner to a lesser included offense instruction on felony murder as a matter of state law.[5]

Because of the statutory prohibition, the court did not instruct the jury as to the lesser included offense of felony murder. Instead, the jury was told that if petitioner was acquitted of the capital crime of intentional killing in the course of a robbery, he "must be discharged" and "he can never be tried for anything that he ever did to Roy Malone." Record 743. The jury subsequently convicted petitioner and imposed the death penalty; after holding a hearing with respect to aggravating and mitigating factors, the trial court refused to overturn that penalty.

In the courts below petitioner attacked the prohibition on lesser included offense instructions in capital cases, arguing that the Alabama statute was constitutionally indistinguishable from the mandatory death penalty statutes struck down in *Woodson* v. *North Carolina*, 428 U. S. 280, and *Roberts* v. *Louisiana*, 428 U. S. 325.[6] The Alabama Court of Criminal

---

[5] The Alabama rule in cases other than capital cases is that the defendant is entitled to a lesser included offense instruction if "there is any reasonable theory from the evidence which would support the position." *Fulghum* v. *State*, 291 Ala. 71, 75, 277 So. 2d 886, 890 (1973). The State concedes that under this standard petitioner would have been entitled to instructions on first-degree (felony) murder and robbery. Brief for Respondent 78–79; Tr. of Oral Arg. 23. The parties disagree as to whether petitioner also would have been entitled to an instruction on second-degree murder under state law. We, of course, have no occasion to pass on this issue.

[6] In the trial court petitioner's counsel argued that telling the jury that "you have got a choice of two things, either you can sentence him to die or you can acquit him" unconstitutionally interfered with its fact-finding role and made the statute an unconstitutional mandatory death

Appeals rejected this argument on the ground that the jury's only function under the Alabama statute is to determine guilt or innocence and that the death sentence it is required

penalty. Record 40. In the Alabama Court of Criminal Appeals the court described petitioner's argument with respect to the constitutionality of the Alabama death penalty statute as follows:

"The trial jury cannot be instructed on lesser included offenses.

"In the absence of such a provision, the appellant insists that the only choice that a petit jury has is imposing death or acquitting the defendant. He states that because only those two choices are presented to the jury, the statute can only be interpreted as having a mandatory death provision." 365 So. 2d 985, 999 (1978).

In his petition for certiorari to the Alabama Supreme Court petitioner specifically stated that he was challenging the Alabama statute as being in violation of the Eighth, Sixth, and Fourteenth Amendments to the United States Constitution and argued that it is "in fact a mandatory death sentence." However, petitioner did not explore these issues more fully in his brief to the Alabama Supreme Court, Tr. of Oral Arg. 5, and, in its one-paragraph opinion affirming the judgment of the Alabama Court of Criminal Appeals, the Supreme Court adverted only to the state constitutional issues petitioner had raised.

In his dissenting opinion MR. JUSTICE REHNQUIST takes the position that we are required to construe the Alabama Supreme Court's failure to address petitioner's federal constitutional claims as a determination that petitioner had waived those claims. We disagree. It is clear that petitioner did present his federal claims in some fashion to the Alabama Supreme Court. The State has never argued that this presentation was insufficient, as a matter of state law, to preserve the issue. On the contrary, in its brief in opposition to the petition for certiorari, the State argued that "the Alabama Appellate Courts have reviewed these matters raised in the petition, fully considered them and correctly decided the issues." Similarly, after certiorari was granted, the State again did not argue that petitioner's due process and Eighth Amendment claims were not properly raised or preserved below.

While the parties of course cannot confer jurisdiction on this Court by agreement, we should not simply brush aside the Alabama Attorney General's view of his own State's law. Cf. *Chambers* v. *Mississippi*, 410 U. S. 284, 290, n. 3. That is especially true in a case such as this, where the death penalty was imposed in a plainly unconstitutional manner. Cf. *Vachon* v. *New Hampshire*, 414 U. S. 478.

to impose after a finding of guilt is merely advisory.[7]  In a brief opinion denying review, the Alabama Supreme Court also rejected petitioner's arguments, citing *Jacobs* v. *State,* 361 So. 2d 640 (Ala. 1978), cert. denied, 439 U. S. 1122, in which it had upheld the constitutionality of the Alabama death penalty statute against a similar challenge.  365 So. 2d 1006, 1007 (1978).

In this Court petitioner contends that the prohibition on giving lesser included offense instructions in capital cases violates both the Eighth Amendment as made applicable to the States by the Fourteenth Amendment and the Due Process Clause of the Fourteenth Amendment by substantially increasing the risk of error in the factfinding process.  Petitioner argues that, in a case in which the evidence clearly establishes the defendant's guilt of a serious noncapital crime such as felony murder, forcing the jury to choose between conviction on the capital offense and acquittal creates a danger that it will resolve any doubts in favor of conviction.[8]

---

[7] 365 So. 2d, at 1000.  The Alabama Court of Criminal Appeals relied on *Jacobs* v. *State,* 361 So. 2d 640 (Ala. 1978), cert. denied, 439 U. S. 1122, for this proposition.  The majority in *Jacobs* did not specifically discuss the validity of the prohibition on lesser included offense instructions.  However, in an opinion concurring in part and dissenting in part, Chief Justice Torbert stated that, far from being suspect, the prohibition helped to save the statute from being an unconstitutional mandatory death penalty. He noted that in *Roberts* v. *Louisiana,* 428 U. S. 325, this Court had struck down a mandatory death penalty statute which required the judge to give the jury the option of convicting on lesser included offenses whether or not such instructions were warranted by the evidence, on the ground that such a statute gave the jury *de facto,* standardless sentencing discretion.  Because Alabama's statute withdraws from the jury the discretion to control the imposition of the death penalty by convicting the defendant on a lesser included offense and because it is the judge and not the jury who does the actual sentencing, the chief justice concluded that the statute was acceptable as a matter of federal constitutional law.

[8] Petitioner also argues that, because Alabama law requires a trial judge to give lesser included offense instructions where appropriate in noncapital cases, the total prohibition on such instructions in capital cases con-

In response, Alabama argues that the preclusion of lesser included offense instructions does not impair the reliability of the factfinding process or prejudice the defendant in any way. Rather, it argues that the apparently mandatory death penalty will make the jury more prone to acquit in a doubtful case and that the jury's ability to force a mistrial by refusing to return a verdict acts as a viable third option in a case in which the jury has doubts but is nevertheless unwilling to acquit. The State also contends that prohibiting lesser included offense instructions is a reasonable way of assuring that the death penalty is not imposed arbitrarily and capriciously as a result of compromise verdicts. Finally, it argues that any error in the imposition of the death penalty by the jury can be cured by the judge after a hearing on aggravating and mitigating circumstances.

## I

At common law the jury was permitted to find the defendant guilty of any lesser offense necessarily included in the offense charged.[9] This rule originally developed as an aid to the prosecution in cases in which the proof failed to establish some element of the crime charged. See 2 C. Wright, Federal Practice and Procedure § 515, n. 54 (1969). But it has long been recognized that it can also be beneficial to the defendant because it affords the jury a less drastic alternative than the choice between conviction of the offense charged and acquittal. As MR. JUSTICE BRENNAN explained in his opinion

---

stitutes an irrational discrimination violative of the Equal Protection Clause of the Fourteenth Amendment. In view of our disposition of the case, it is not necessary to consider this issue. Moreover, petitioner failed to raise this claim in the courts below.

[9] 2 M. Hale, Pleas of the Crown 301–302 (1736); 2 W. Hawkins, Pleas of the Crown 623 (6th ed. 1787); 1 J. Chitty, Criminal Law 250 (5th Am. ed. 1847); T. Starkie, Treatise on Criminal Pleading 351–352 (2d ed. 1822).

for the Court in *Keeble* v. *United States,* 412 U. S. 205, 208, providing the jury with the "third option" of convicting on a lesser included offense ensures that the jury will accord the defendant the full benefit of the reasonable-doubt standard:

"Moreover, it is no answer to petitioner's demand for a jury instruction on a lesser offense to argue that a defendant may be better off without such an instruction. True, if the prosecution has not established beyond a reasonable doubt every element of the offense charged, and if no lesser offense instruction is offered, the jury must, as a theoretical matter, return a verdict of acquittal. But a defendant is entitled to a lesser offense instruction—in this context or any other—precisely because he should not be exposed to the substantial risk that the jury's practice will diverge from theory. Where one of the elements of the offense charged remains in doubt, but the defendant is plainly guilty of *some* offense, the jury is likely to resolve its doubts in favor of conviction. In the case before us, for example, an intent to commit serious bodily injury is a necessary element of the crime with which petitioner was charged, but not of the crime of simple assault. Since the nature of petitioner's intent was very much in dispute at trial, the jury could rationally have convicted him of simple assault if that option had been presented. But the jury was presented with only two options: convicting the defendant of assault with intent to commit great bodily injury, or acquitting him outright. We cannot say that the availability of a third option—convicting the defendant of simple assault—could not have resulted in a different verdict. Indeed, while we have never explicitly held that the Due Process Clause of the Fifth Amendment guarantees the right of a defendant to have the jury instructed on a lesser included offense, it is nevertheless clear that a construction of the Major Crimes Act to preclude such an

instruction would raise difficult constitutional questions."
*Id.,* at 212–213 (emphasis in original).

Alabama's failure to afford capital defendants the protection provided by lesser included offense instructions is unique in American criminal law.[10] In the federal courts, it has long been "beyond dispute that the defendant is entitled to an instruction on a lesser included offense if the evidence would permit a jury rationally to find him guilty of the lesser offense and acquit him of the greater." *Keeble* v. *United States, supra,* at 208.[11] Similarly, the state courts that have ad-

---

[10] Mississippi's post-*Furman* death penalty statute also contained a prohibition on charging lesser included offenses. In *Jackson* v. *State,* 337 So. 2d 1242, 1255 (1976), the Mississippi Supreme Court struck down this part of the statute on the ground that it "constitutes an impediment to full and complete administration of justice in the trial of capital cases and is therefore not binding on the courts. . . ." While warning that lesser included offense instructions should not be given "indiscriminately or automatically," the court held that they should continue to be given when "warranted by the evidence."

[11] This principle was first announced in *Stevenson* v. *United States,* 162 U. S. 313, 323:

"A judge may be entirely satisfied from the whole evidence in the case that the person doing the killing was actuated by malice; that he was not in any such passion as to lower the grade of the crime from murder to manslaughter by reason of any absence of malice; and yet if there be any evidence fairly tending to bear upon the issue of manslaughter, it is the province of the jury to determine from all the evidence what the condition of mind was, and to say whether the crime was murder or manslaughter."

See also *Berra* v. *United States,* 351 U. S. 131, 134, where Mr. Justice Harlan indicated that the defendant's entitlement to such an instruction could not be doubted:

"In a case where some of the elements of the crime charged themselves constitute a lesser crime, the defendant, if the evidence justified it, would no doubt be entitled to an instruction which would permit a finding of guilt of the lesser offense. See *Stevenson* v. *United States,* 162 U. S. 313."

Rule 31 (c) of the Federal Rules of Criminal Procedure provides that "[t]he defendant may be found guilty of an offense necessarily included

dressed the issue have unanimously held that a defendant is entitled to a lesser included offense instruction where the evidence warrants it.[12] Indeed, for all noncapital crimes

in the offense charged. . . ." Although the Rule is permissively phrased, it has been universally interpreted as granting a defendant a right to a requested lesser included offense instruction if the evidence warrants it. See, *e. g., United States* v. *Scharf,* 558 F. 2d 498, 502 (CA8 1977); *United States* v. *Crutchfield,* 547 F. 2d 496, 500 (CA9 1977); *Government of Virgin Islands* v. *Carmona,* 422 F. 2d 95, 100 (CA3 1970); 2 C. Wright, Federal Practice and Procedure § 515, n. 57 (1969).

[12] Although the States vary in their descriptions of the quantum of proof necessary to give rise to a right to a lesser included offense instruction, they agree that it must be given when supported by the evidence. See, *e. g., Christie* v. *State,* 580 P. 2d 310 (Alaska 1978); *State* v. *Valencia,* 121 Ariz. 191, 589 P. 2d 434 (1979); *Westbrook* v. *State,* 265 Ark. 736, 580 S. W. 2d 702 (1979); *People* v. *Preston,* 9 Cal. 3d 308, 508 P. 2d 300 (1973); *People* v. *White,* 191 Colo. 353, 553 P. 2d 68 (1976); *State* v. *Brown,* 173 Conn. 254, 377 A. 2d 268 (1977); *Matthews* v. *State,* 310 A. 2d 645 (Del. 1973); *State* v. *Terry,* 336 So. 2d 65 (Fla. 1976); *Loury* v. *State,* 147 Ga. App. 152, 248 S. E. 2d 291 (1978); *State* v. *Travis,* 45 Haw. 435, 368 P. 2d 883 (1962); *State* v. *Beason,* 95 Idaho 267, 506 P. 2d 1340 (1973); *People* v. *Simpson,* 57 Ill. App. 3d 442, 373 N. E. 2d 809 (1978); *Pruitt* v. *State,* 269 Ind. 559, 382 N. E. 2d 150 (1978); *State* v. *Millspaugh,* 257 N. W. 2d 513 (Iowa 1977); *State* v. *White,* 225 Kan. 87, 587 P. 2d 1259 (1978); *Martin* v. *Commonwealth,* 571 S. W. 2d 613 (Ky. 1978); *State* v. *Carmichael,* 405 A. 2d 732 (Me. 1979); *Blackwell* v. *State,* 278 Md. 466, 365 A. 2d 545 (1976), cert. denied, 431 U. S. 918; *Commonwealth* v. *Santo,* 375 Mass. 299, 376 N. E. 2d 866 (1978); *People* v. *Jones,* 395 Mich. 379, 236 N. W. 2d 461 (1975); *State* v. *Merrill,* 274 N. W. 2d 99 (Minn. 1978); *Jackson* v. *State,* 337 So. 2d 1242 (Miss. 1976); *State* v. *Stone,* 571 S. W. 2d 486 (Mo. App. 1978); *State* v. *Ostwald,* 180 Mont. 530, 591 P. 2d 646 (1979); *State* v. *Hegwood,* 202 Neb. 379, 275 N. W. 2d 605 (1979); *Colle* v. *State,* 85 Nev. 289, 454 P. 2d 21 (1969); *State* v. *Boone,* 119 N. H. 594, 406 A. 2d 113 (1979); *State* v. *Saulnier,* 63 N. J. 199, 306 A. 2d 67 (1973); *State* v. *Aubrey,* 91 N. M. 1, 569 P. 2d 411 (1977); *People* v. *Henderson,* 41 N. Y. 2d 233, 359 N. E. 2d 1357 (1976); *State* v. *Drumgold,* 297 N. C. 267, 254 S. E. 2d 531 (1979); *State* v. *Piper,* 261 N. W. 2d 650 (N. D. 1977); *State* v. *Kilby,* 50 Ohio St. 2d 21, 361 N. W. 2d 1336 (1977); *Gilbreath* v. *State,* 555 P. 2d 69 (Okla. Crim. App. 1976); *State* v. *Thayer,* 32 Ore. App. 193, 573 P. 2d 758 (1978); *Commonwealth* v. *Terrell,* 482 Pa.

Alabama itself gives the defendant a right to such instructions under appropriate circumstances. See n. 5, *supra*.

While we have never held that a defendant is entitled to a lesser included offense instruction as a matter of due process, the nearly universal acceptance of the rule in both state and federal courts establishes the value to the defendant of this procedural safeguard. That safeguard would seem to be especially important in a case such as this. For when the evidence unquestionably establishes that the defendant is guilty of a serious, violent offense—but leaves some doubt with respect to an element that would justify conviction of a capital offense—the failure to give the jury the "third option" of convicting on a lesser included offense would seem inevitably to enhance the risk of an unwarranted conviction.

Such a risk cannot be tolerated in a case in which the defendant's life is at stake. As we have often stated, there is a significant constitutional difference between the death penalty and lesser punishments:

> "[D]eath is a different kind of punishment from any other which may be imposed in this country. . . . From the point of view of the defendant, it is different in both its severity and its finality. From the point of view of society, the action of the sovereign in taking the life of one of its citizens also differs dramatically from any other legitimate state action. It is of vital importance to the defendant and to the community that any decision to impose the death sentence be, and appear to be, based on

303, 393 A. 2d 1117 (1978); *State* v. *Funchess,* 267 S. C. 427, 229 S. E. 2d 331 (1976); *State* v. *Grimes,* 90 S. D. 43, 237 N. W. 2d 900 (1976); *Howard* v. *State,* 578 S. W. 2d 83 (Tenn. 1979); *Day* v. *State,* 532 S. W. 2d 302 (Tex. Crim. App. 1975); *State* v. *Gillian,* 23 Utah 2d 372, 463 P. 2d 811 (1970); *Painter* v. *Commonwealth,* 210 Va. 360, 171 S. E. 2d 166 (1969); *State* v. *Workman,* 90 Wash. 2d 443, 584 P. 2d 382 (1978); *State* v. *Wayne,* —— W. Va. ——, 245 S. E. 2d 838 (1978); *Leach* v. *State,* 83 Wis. 2d 199, 265 N. W. 2d 495 (1978); *Jones* v. *State,* 580 P. 2d 1150 (Wyo. 1978).

reason rather than caprice or emotion." *Gardner* v. *Florida*, 430 U. S. 349, 357–358 (opinion of STEVENS, J.).

To insure that the death penalty is indeed imposed on the basis of "reason rather than caprice or emotion," we have invalidated procedural rules that tended to diminish the reliability of the sentencing determination.[13] The same reasoning must apply to rules that diminish the reliability of the guilt determination. Thus, if the unavailability of a lesser included offense instruction enhances the risk of an unwarranted conviction, Alabama is constitutionally prohibited from withdrawing that option from the jury in a capital case.[14]

## II

Alabama argues, however, that petitioner's factual premise is wrong and that, in the context of an apparently mandatory

___

[13] See *Gardner* v. *Florida*, 430 U. S. 349 (opinion of STEVENS, J.); *Lockett* v. *Ohio*, 438 U. S. 586. In *Lockett* THE CHIEF JUSTICE explained the rationale for requiring more reliable procedures in capital sentencing determinations:

"There is no perfect procedure for deciding in which cases governmental authority should be used to impose death. But a statute that prevents the sentencer in all capital cases from giving independent mitigating weight to aspects of the defendant's character and record and to circumstances of the offense proffered in mitigation creates the risk that the death penalty will be imposed in spite of factors which may call for a less severe penalty. When the choice is between life and death, that risk is unacceptable and incompatible with the commands of the Eighth and Fourteenth Amendments." *Id.*, at 605.

See also *Woodson* v. *North Carolina*, 428 U. S. 280, 305 (opinion of STEWART, POWELL, and STEVENS, JJ.):

"Death, in its finality, differs more from life imprisonment than a 100-year prison term differs from one of only a year or two. Because of that qualitative difference, there is a corresponding difference in the need for reliability in the determination that death is the appropriate punishment in a specific case."

[14] We need not and do not decide whether the Due Process Clause would require the giving of such instructions in a noncapital case.

death penalty statute, the preclusion of lesser included offense instructions heightens, rather than diminishes, the reliability of the guilt determination. The State argues that, because the jury is led to believe that a death sentence will automatically follow a finding of guilt,[15] it will be more likely to acquit than to convict whenever it has anything approaching a reasonable doubt. In support of this theory the State relies on the historical data described in *Woodson* v. *North Carolina*, 428 U. S., at 293 (opinion of STEWART, POWELL, and STEVENS, JJ.), which indicated that American juries have traditionally been so reluctant to impose the death penalty that they have "with some regularity, disregarded their oaths and refused to convict defendants where a death sentence was the automatic consequence of a guilty verdict."

The State's argument is based on a misreading of our cases striking down mandatory death penalties. In *Furman* v. *Georgia*, 408 U. S. 238, the Court held unconstitutional a Georgia statute that vested the jury with complete and unguided discretion to impose the death penalty or not as it saw fit, on the ground that such a procedure led to the "wanton" and "freakish" imposition of the penalty. *Id.*, at 310 (STEWART, J., concurring). In response to *Furman* several States enacted statutes that purported to withdraw any and all discretion from the jury with respect to the punishment decision by making the death penalty automatic on a finding of guilt. But, as the prevailing opinion noted in *Woodson* v. *North Carolina*, in so doing the States "simply papered over the problem of unguided and unchecked jury discretion." 428 U. S., at 302 (opinion of STEWART, POWELL, and STEVENS, JJ.). For, as historical evidence indicated, juries faced with a mandatory death penalty statute often

---

[15] The jury is not told that the judge is the final sentencing authority. Rather, the jury is instructed that it must impose the death sentence if it finds the defendant guilty and is led to believe, by implication, that its sentence will be final.

created their own sentencing discretion by distorting the fact-finding process, acquitting even a clearly guilty defendant if they felt he did not deserve to die for his crime. Because the jury was given no guidance whatsoever for determining when it should exercise this *de facto* sentencing power, the mandatory death statutes raised the same possibility that the death penalty would be imposed in an arbitrary and capricious manner as the statute held invalid in *Furman*.[16]

The Alabama statute, which was enacted after *Furman* but before *Woodson,* has many of the same flaws that made the North Carolina statute unconstitutional. Thus, the Alabama statute makes the guilt determination depend, at least in part, on the jury's feelings as to whether or not the defendant deserves the death penalty, without giving the jury any standards to guide its decision on this issue.

In *Jacobs* v. *State,* 361 So. 2d 640 (Ala. 1978), cert. denied, 439 U. S. 1122, Chief Justice Torbert attempted to distinguish the Alabama death statute from the North Carolina and Louisiana statutes on the ground that the unavailability of lesser included offense instructions substantially reduces the risk of jury nullification. Thus, because of their reluctance to acquit a defendant who is obviously guilty of some serious crime, juries will be unlikely to disregard their oaths and acquit a defendant who is guilty of a capital crime simply because of their abhorrence of the death penalty.

---

[16] The same analysis led to the conclusion that Louisiana's death penalty statute was unconstitutional. *Roberts* v. *Louisiana,* 428 U. S. 325 (opinion of STEWART, POWELL, and STEVENS, JJ.). That case involved a mandatory death penalty statute that required the judge to give a lesser included offense instruction whether or not it was justified by the evidence. Because such a procedure "invites the jurors to disregard their oaths and choose a verdict for a lesser offense whenever they feel the death penalty is inappropriate," it was the equivalent of a discretionary death statute in which the jury was given complete and unreviewable discretion, unguided by any standards as to when the death penalty was appropriate. *Id.,* at 335.

However, because the death penalty is mandatory, the State argues that the jury will be especially careful to accord the defendant the full benefit of the reasonable-doubt standard. In the State's view the end result is a perfect balance between competing emotional pressures that ensures the defendant a reliable procedure, while at the same time reducing the possibility of arbitrary and capricious guilt determinations.[17]

The State's theory, however, is supported by nothing more than speculation. The 96% conviction rate achieved by prosecutors under the Alabama statute hardly supports the notion that the statute creates such a perfect equipoise.[18]

---

[17] In *Gregg* v. *Georgia*, 428 U. S. 153, 199 (opinion of STEWART, POWELL, and STEVENS, JJ.), the prevailing opinion specifically rejected the argument that the new Georgia statute was unconstitutional because the availability of lesser included offense instructions made it possible that a jury might erroneously remove a defendant from consideration as a candidate for the death penalty. Under a statute like Georgia's, where guilt is determined separately from punishment, there is little risk that the jury will use its power to decide guilt to make a *de facto* punishment decision. Thus, eliminating lesser included offense instructions would not have the effect of reducing the risk of arbitrariness in the imposition of the death penalty. On the contrary, as was stated in a footnote in *Gregg*, eliminating this and other procedural safeguards that have long been accorded criminal defendants would raise serious constitutional questions. *Id.*, at 199, n. 50.

Thus, it is only in cases like this in which the preclusion of lesser included offenses is linked to a mandatory death penalty that the State could even raise the possibility that the elimination of this procedural safeguard was a permissible way to reduce the arbitrary and capricious infliction of the death penalty.

[18] Forty-eight out of the first 50 defendants tried under the Alabama statute were convicted. See Brief in Opposition in *Jacobs* v. *Alabama*, O. T. 1978, No. 78–5696, pp. 10, 35. In this case the State has argued that the reason for the high conviction rate is that prosecutors rarely indict for capital offenses except in the clearest of cases because of the risk that a failure of proof on an essential element of the crime might lead to an acquittal. Assuming that this is the reason for the high conviction rate, the statistics still do not support the hypothesis that juries will be more likely to acquit than convict in a doubtful case.

Moreover, it seems unlikely that many jurors would react in the theoretically perfect way the State suggests. As Justice Shores stated in dissent in *Jacobs* v. *State, supra,* at 651–652:

> "The Supreme Court of the United States did remark in *Furman, infra,* and again in *Woodson, supra,* that this nation abhorred the mandatory death sentence. . . . I suggest that, although there is no historical data to support it, most, if not all, jurors at this point in our history perhaps equally abhor setting free a defendant where the evidence establishes his guilt of a serious crime. We have no way of knowing what influence either of these factors have on a jury's deliberation, and which of these unappealing alternatives a jury opts for in a particular case is a matter of purest conjecture. We cannot know that one outweighs the other. Jurors are not expected to come into the jury box and leave behind all that their human experience has taught them. The increasing crime rate in this country is a source of concern to all Americans. To expect a jury to ignore this reality and to find a defendant innocent and thereby set him free when the evidence establishes beyond doubt that he is guilty of some violent crime requires of our juries clinical detachment from the reality of human experience. . . ."

In the final analysis the difficulty with the Alabama statute is that it interjects irrelevant considerations into the factfinding process, diverting the jury's attention from the central issue of whether the State has satisfied its burden of proving beyond a reasonable doubt that the defendant is guilty of a capital crime. Thus, on the one hand, the unavailability of the third option of convicting on a lesser included offense may encourage the jury to convict for an impermissible reason— its belief that the defendant is guilty of some serious crime and should be punished. On the other hand, the apparently mandatory nature of the death penalty may encourage it to

acquit for an equally impermissible reason—that, whatever his crime, the defendant does not deserve death.[19] In any particular case these two extraneous factors may favor the defendant or the prosecution or they may cancel each other out. But in every case they introduce a level of uncertainty and unreliability into the factfinding process that cannot be tolerated in a capital case.

## III

The State also argues that, whatever the effect of precluding lesser included offense instructions might otherwise be, there is no possibility of harm under the Alabama statute because of two additional safeguards. First, although the jury may not convict the defendant of a lesser included offense, the State argues that it may refuse to return any verdict at all in a doubtful case, thus creating a mistrial. After a mistrial, the State may reindict on the capital offense or on lesser included offenses.[20] In this case the jury was in-

---

[19] The closing arguments in this case indicate that under the Alabama statute the issue of whether or not the defendant deserves the death penalty will often seem more important than the issue of whether the State has proved each and every element of the capital crime beyond a reasonable doubt. Thus, in this case both the prosecutors and defense attorneys spent a great deal of argument time on the desirability of the death penalty in general and its application to the petitioner in particular, rather than focusing on the crucial issue of whether the evidence showed that petitioner had possessed the intent necessary to convict on the capital charge.

[20] Alabama Code § 13–11–2 (c) (1975) provides:

"[I]f the jury finds the defendant not guilty, the defendant must be discharged. The court may enter a judgment of mistrial upon failure of the jury to agree on a verdict of guilty or not guilty or on the fixing of the penalty of death. After entry of a judgment of mistrial, the defendant may be tried again for the aggravated offense, or he may be reindicted for an offense wherein the indictment does not allege an aggravated circumstance. If the defendant is reindicted for an offense wherein the indictment does not allege an aggravated circumstance, the punishment upon conviction shall be as heretofore or hereafter provided

structed that a mistrial would be declared if it was unable to agree on a verdict or if it was unable to agree on fixing the death penalty; it was also told that, in the event of a mistrial, the defendant could be tried again. Record 743.

We are not persuaded by the State's argument that the mistrial "option" is an adequate substitute for proper instructions on lesser included offenses. It is extremely doubtful that juries will understand the full implications of a mistrial [21] or will have any confidence that their choice of the mistrial option will ultimately lead to the right result. Thus, they could have no assurance that a second trial would end in the conviction of the defendant on a lesser included offense. Moreover, invoking the mistrial option in a case in which the jury agrees that the defendant is guilty of *some* offense, though not the offense charged, would require the jurors to violate their oaths to acquit in a proper case—contrary to the State's assertions that juries should not be expected to make such lawless choices. Finally, the fact that lesser included offense instructions have traditionally been given in noncapital cases despite the availability of the mistrial "option"

---

by law; however, the punishment shall not be death or life imprisonment without parole."

[21] The jury in this case could hardly have been sure of the effect of a mistrial. In his closing argument one of petitioner's attorneys told the jury that "if I can have any opportunity under any reindictment or any other way to take him [petitioner] before this bar of justice and enter a plea of guilty of murder, robbery, either one, life in prison, I'll take him." Record 689. At another point, however, petitioner's other attorney indicated that petitioner could still be punished even if he were acquitted, stating: "I submit to you if you acquit him he's still in the Etowah County Jail. I submit to you if you acquit him that he can receive his due punishment, but I say to you his due punishment is not death." *Id.*, at 709.

In his instructions to the jury the trial judge stated that, if acquitted, petitioner could not be tried "for anything he ever did to Roy Malone." And, although he explained that petitioner could be retried in the event of a mistrial, he did not elaborate on what that retrial would entail. *Id.*, at 743.

indicates that such instructions provide a necessary additional measure of protection for the defendant.

The State's second argument is that, even if a defendant is erroneously convicted, the fact that the judge has the ultimate sentencing power will ensure that he is not improperly sentenced to death. Again, we are not persuaded that sentencing by the judge compensates for the risk that the jury may return an improper verdict because of the unavailability of a "third option."

If a fully instructed jury would find the defendant guilty only of a lesser, noncapital offense, the judge would not have the opportunity to impose the death sentence. Moreover, it is manifest that the jury's verdict must have a tendency to motivate the judge to impose the same sentence that the jury did. Indeed, according to statistics submitted by the State's Attorney General, it is fair to infer that the jury verdict will ordinarily be followed by the judge even though he must hold a separate hearing in aggravation and mitigation before he imposes sentence.[22] Under these circumstances, we are unwilling to presume that a post-trial hearing will always cor-

---

[22] The State's brief in opposition to the petition for certiorari in *Jacobs* v. *Alabama*, O. T. 1978, No. 78–5696, states that of the first 45 defendants sentenced after conviction by a jury of capital offenses, 37 received the death penalty from the trial judge. See pp. 10, 35 of that brief. In his dissent in *Jacobs* v. *State*, 361 So. 2d, at 650–651, Justice Jones pointed out the practical obstacles to treating the jury's imposition of the death penalty as being purely advisory:

"[T]o leave sentence reduction in the prerogative of the trial court is to place undue pressures upon this office. Again, admittedly, a trial judge must often be the bulwark of the legal system when presented with unpopular causes and adverse public opinion. This State's recent history, however, reflects the outcry of unjustified criticism attendant with a trial judge's reduction of a sentence to life imprisonment without possibility of parole, after a jury has returned a sentence of death. Clearly, this pressure constitutes an undue compulsion on the trial judge to conform the sentence which he imposes with that previously returned by the jury." (Footnote omitted.)

rect whatever mistakes have occurred in the performance of the jury's factfinding function.

Accordingly, the judgment of the Alabama Supreme Court is

*Reversed.*

MR. JUSTICE BRENNAN, concurring.

Although I join the Court's opinion, I continue to believe that the death penalty is, in all circumstances, contrary to the Eighth Amendment's prohibition against imposition of cruel and unusual punishments. *Gregg* v. *Georgia,* 428 U. S. 153, 227 (1976) (BRENNAN, J., dissenting).

MR. JUSTICE MARSHALL, concurring in the judgment.

I continue to believe that the death penalty is, under all circumstances, cruel and unusual punishment prohibited by the Eighth and Fourteenth Amendments. *Furman* v. *Georgia,* 408 U. S. 238, 314–374 (1972) (MARSHALL, J., concurring); *Gregg* v. *Georgia,* 428 U. S. 153, 231–241 (1976) (MARSHALL, J., dissenting); *Godfrey* v. *Georgia,* 446 U. S. 420, 433–442 (1980) (MARSHALL, J., concurring in judgment). In addition, I agree with the Court that Alabama's prohibition on giving lesser included offense instructions in capital cases is unconstitutional because it substantially increases the risk of error in the factfinding process. I do not, however, join in the Court's assumption that the death penalty may ever be imposed without violating the command of the Eighth Amendment that no "cruel and unusual punishments" be imposed. *Lockett* v. *Ohio,* 438 U. S. 586, 621 (1978) (MARSHALL, J., concurring in judgment); *Bell* v. *Ohio,* 438 U. S. 637, 643–644 (1978) (MARSHALL, J., concurring in judgment). I join in the judgment of the Court.

MR. JUSTICE REHNQUIST, with whom MR. JUSTICE WHITE joins, dissenting.

The opinion of the Court begins by stating that we granted certiorari to decide the question of whether a sentence of

death may be constitutionally imposed after a jury verdict of guilt of a capital offense, when the jury was not permitted to consider a verdict of guilt of a lesser included noncapital offense where the evidence would have supported such a verdict. I find the Court's treatment of this issue highly unusual, since although this question was raised in the Alabama trial court and the Alabama intermediate Court of Appeals, it was not preserved in the Supreme Court of Alabama. That court began its opinion with this language:

"Petitioner Beck raises only one issue here:

"'Whether the Alabama Court of Criminal Appeals erred in its finding that the Alabama Death Penalty Statute is not in violation of Article III, Section 43, Article V, Section 124 and Amendment 38, of the 1901 Constitution of Alabama.'" 365 So. 2d 1006, 1007.

Obviously, unless the Supreme Court of Alabama was wholly in error in deciding what issue petitioner had raised there, it was obviously not a question involving the United States Constitution.

I do not believe it suffices, under the jurisdiction granted to us by the Constitution and by Congress, to brush this matter off as the Court does in its footnote 6 on the grounds that petitioner presented his claim "in some fashion" to the Supreme Court of Alabama, and that "[t]he State has never argued that this presentation was insufficient, as a matter of state law, to preserve the issue."

This is not a matter that may be stipulated or waived by any of the parties to a case decided on its merits here. Title 28 U. S. C. § 1257 provides that our certiorari jurisdiction extends only to "[f]inal judgments or decrees rendered by the highest court of a State in which a decision could be had. . . ."

In *Hulbert* v. *Chicago*, 202 U. S. 275, 280 (1906), this Court said:

"It is urged that in the writ of error and petition for citation it is stated that certain rights and privileges were

claimed under the Constitution of the United States, and that the Supreme Court of the State of Illinois decided against such rights and privileges, and, it is further urged, that the chief justice of the court allow the writ of error. This is not sufficient."

More recently, in *Street* v. *New York,* 394 U. S. 576, 582 (1969), the Court has said:

"Moreover, this Court has stated that when, as here, the highest state court has failed to pass upon a federal question, it will be assumed that the omission was due to want of proper presentation in the state courts *unless the aggrieved party in this Court can affirmatively show the contrary."* (Emphasis supplied.)

Thus it is insufficient that the State "has never argued" that a judgment under review is not that of the highest court of the State in which a judgment could be had; it will be *assumed* that the omission was due to want of proper presentation in the state courts, unless the aggrieved party in this Court can *affirmatively* show the contrary. Here I am not convinced that such a showing has been made.

Believing, therefore, because of the proceedings in the Supreme Court of Alabama, that we do not have jurisdiction under 28 U. S. C. § 1257 to decide the question which the Court purports to decide, I dissent.