638 So.2d 22 (1994)
Jimmy Lee EADDY, Appellant,
v.
STATE of Florida, Appellee.
No. 79987.
Supreme Court of Florida.
April 14, 1994.
Rehearing Denied June 16, 1994.
*23 Nancy A. Daniels, Public Defender and David A. Davis, Asst. Public Defender, Second Judicial Circuit, Tallahassee, for appellant.
Robert A. Butterworth, Atty. Gen. and Gypsy Bailey, Asst. Atty. Gen., Tallahassee, for appellee.
PER CURIAM.
Jimmy Lee Eaddy appeals his conviction for first-degree murder and the death sentence imposed. We have jurisdiction pursuant to article V, section 3(b)(1) of the Florida Constitution. We reverse the conviction and sentence because the court erred in denying Eaddy's request that the jury be instructed on the lesser-included offenses to first-degree murder.
Friends discovered Thomas Edmonds' body on a bed in his Jacksonville apartment in January 1977. Edmonds had been hit in the back of the head with a blunt object and stabbed eleven times, mainly in the upper torso. Although there was no evidence of forced entry into the apartment, the police noted the following scene: the bedroom dresser drawers had been pulled out; items of clothing were scattered around the room; broken glass littered the bed; the pockets of Edmonds' pants had been turned out, but his gold chain and other jewelry were not taken; and a blood-stained knife was found near the body. The police lifted latent fingerprints from a number of objects in the house.
Edmonds' father received credit card receipts from gas stations in Georgia and South Carolina indicating that someone had used Edmonds' credit card after the murder. Although the receipts purportedly bore Edmonds' signature, his father testified that the signatures were not Edmonds'. One receipt also contained the lined through signature "J.E. Eadd." Edmonds' burned out car was found in Myrtle Beach, South Carolina.
In 1990, using recent innovations in computer technology, the police matched fingerprints from Edmonds' apartment with Eaddy's prints. Eaddy was arrested in South Carolina, returned to Duval County, and placed in a cell with several other inmates, including Ismael Lopez. During police interviews in South Carolina, Eaddy gave oral and written statements denying any knowledge of Edmonds and denying being in Florida in January 1977. Eaddy was originally charged with second-degree murder. Two months later, the charge was upgraded to first-degree murder and a count of armed robbery was added. The court granted Eaddy's pretrial motion to dismiss the robbery count, based upon the running of the statute of limitations.[1]
*24 At trial, Eaddy admitted the following: Edmonds and someone named Rob picked him up as he was hitchhiking; he went to Edmonds' house and drank a few beers; he left while Edmonds and Rob were arguing; Rob picked him up a short time later and they drove north together; he used Edmonds' credit card to purchase gas; and Rob left Eaddy at his mother's home in South Carolina. Lopez testified that Eaddy recounted a similar sequence of events to him, but that Eaddy admitted killing Edmonds when he became angered over a homosexual advance from Edmonds. The medical examiner testified that Edmonds had one injury to the back of the head caused by a blow from a blunt instrument, possibly a broken soda bottle found in the bedroom, and eleven knife wounds, including two lethal wounds to the heart. A police fingerprint expert testified that some of the prints found in Edmonds' apartment matched Eaddy's fingerprints. A police handwriting expert testified that Eaddy probably signed the receipts for Edmonds' credit card.
The jury found Eaddy guilty of first-degree murder and recommended death by a vote of eleven to one. The trial judge followed the jury's recommendation and imposed a death sentence, finding two aggravating circumstances[2] and no mitigating circumstances.
Eaddy raises fifteen issues on appeal.[3] We find that the court's failure to instruct the jury as to the lesser-included offenses to first-degree murder requires reversal of Eaddy's conviction and sentence. Our resolution of that issue also renders moot all of the penalty phase issues raised.
During the charge conference, defense counsel requested that the court instruct the jury on the lesser-included offenses to first-degree murder. Although defense counsel informed the court that the district courts had ruled that instruction need not be given on time-barred offenses, counsel also stated that Eaddy was willing to waive the statute of limitations as to these lesser-included offenses and abide by any conviction for such offenses. The State argued that Eaddy's assertion of the statute of limitations as to the robbery count foreclosed waiver of the statute as to the lesser-included offenses to first-degree murder. The court denied instruction on the lesser-included offenses.
A defendant may waive the statute of limitations defense when requesting instruction on time-barred offenses. Tucker v. State, 459 So.2d 306, 309 (Fla. 1984). Moreover, a trial court errs when it does not accept a defendant's waiver of the applicable statute of limitations in order to give instructions on lesser-included offenses in a capital case. Rembert v. Dugger, 842 F.2d 301 (11th Cir.), cert. denied, 488 U.S. 969, 109 S.Ct. 500, 102 L.Ed.2d 536 (1988). In Beck v. Alabama, 447 U.S. 625, 638, 100 S.Ct. 2382, 2390, 65 L.Ed.2d 392 (1980), the United States Supreme Court determined that a state is constitutionally prohibited from withdrawing the option of instruction on lesser-included offenses in a capital case when it enhances the risk of an unwarranted conviction. The Court explained that failure to give such instructions leaves the jury with only two options, conviction of the offense charged or acquittal. Id. at 633, 100 S.Ct. at 2387. Failure to give the jury the "third *25 option" of convicting on a lesser-included offense inevitably enhances the risk of an unwarranted conviction. "Such a risk cannot be tolerated in a case in which the defendant's life is at stake." Id. at 637, 100 S.Ct. at 2389.
Much like the instant case, Rembert involved a first-degree murder charge along with an attempted armed robbery count that was dismissed as time-barred by the statute of limitations. 842 F.2d at 302. The trial court refused to accept Rembert's waiver of the statute of limitations for the lesser-included offenses to his first-degree murder charge. Id. Consequently, the trial court did not instruct the jury on the lesser-included offenses, but instead only instructed as to first-degree premeditated murder and first-degree felony murder. Id. On appeal, the First District Court of Appeal concluded that Rembert had not met the procedural requirements for a valid waiver of the statute of limitations and affirmed his conviction and sentence. Rembert v. State, 476 So.2d 721 (Fla. 1st DCA 1985).
In addressing Rembert's petition for a writ of habeas corpus, the Eleventh Circuit Court of Appeals determined that the trial court erred in not accepting Rembert's waiver of the statute of limitations because "[d]ue process requires that a defendant in a capital case receive instructions on lesser included offenses." 842 F.2d at 303. The only times a court is not required to instruct the jury on lesser-included offenses are when the case is noncapital, Perry v. Smith, 810 F.2d 1078, 1080 (11th Cir.1987), or when a defendant does not waive the applicable statute of limitations. Spaziano v. Florida, 468 U.S. 447, 457, 104 S.Ct. 3154, 3160, 82 L.Ed.2d 340 (1984); Rembert, 842 F.2d at 303.
Although the mere request for instructions on time-barred lesser-included offenses is not an effective waiver of the statute of limitations defense, Tucker, 459 So.2d at 309, Eaddy's counsel did much more in this case. She affirmatively asserted that Eaddy "is willing to waive his right to the statute of limitations. And were the jury to return a verdict on a lesser included, he is willing to abide by that conviction and waive any rights under the statute of limitations." The trial judge failed to make the type of inquiry set forth in Tucker. 459 So.2d at 309 (effective waiver of statute of limitations requires determination on the record that waiver is knowing, intelligent, and voluntary; made for defendant's benefit after consultation with counsel; and does not handicap the defense or contravene public policy behind statute). Instead, the trial judge erroneously concluded that waiver was not permitted under these circumstances.
In Rembert's case, the Eleventh Circuit Court of Appeals determined that the constitutional error in failing to instruct the jury on the lesser-included offenses was rendered harmless by the imposition of a life sentence. Rembert, 842 F.2d at 303. In the instant case, the trial judge's failure to give the requested instructions cannot be deemed harmless in the face of the jury's recommended death sentence. Because Eaddy's jury was only instructed on first-degree murder in this case, they were faced with the choice of convicting him of that offense or acquitting him. Such a "Hobson's choice" enhanced the risk of an unwarranted conviction for first-degree murder, the very dilemma that the Supreme Court found unacceptable in Beck. See 447 U.S. at 637, 100 S.Ct. at 2389.
Because the denial of instruction as to the lesser-included offenses to first-degree murder increased the risk of death as a penalty, we find that Eaddy was denied due process. Accordingly, we reverse and remand for a new trial.
It is so ordered.
BARKETT, C.J., and OVERTON, McDONALD, SHAW, GRIMES, KOGAN and HARDING, JJ., concur.
NOTES
[1] Section 775.15(2)(a), Florida Statutes (1977), provides that "[a] prosecution for a felony of the first degree must be commenced within 4 years after it is committed."
[2] The sentencing order found that the murder was committed while the defendant was engaged in the commission of a robbery and that the murder was especially heinous, atrocious, or cruel.
[3] Eaddy raises these issues: 1) denial of challenges for cause of prospective jurors; 2) restriction of voir dire questioning of prospective jurors; 3) restriction of questioning of State witness Lopez; 4) exclusion of Eaddy's hypnotically-refreshed testimony; 5) exclusion of testimony regarding the signatures on the credit card receipts; 6) failure to instruct the jury on the lesser-included offenses to first-degree murder; 7) error in giving the felony murder instruction based upon the sufficiency of the evidence to prove robbery; 8) error in giving the felony murder instruction based upon the statute of limitations on the underlying robbery; 9) errors during closing argument, including restricting Eaddy's argument and improper argument by the prosecutor; 10) heinous, atrocious, or cruel aggravating circumstance not properly found; 11) error to instruct the jury on the cold, calculated, and premeditated (CCP) aggravating circumstance; 12) CCP instruction unconstitutionally vague; 13) ex post facto application of CCP aggravating circumstance; 14) death sentence not proportional; and 15) mitigating evidence not properly considered.