713 So.2d 431 (1998)
John CHILDERS, Appellant,
v.
STATE of Florida, Appellee.
No. 96-04568.
District Court of Appeal of Florida, Second District.
May 29, 1998.
Rehearing Denied July 9, 1998.
*432 Bernard F. Daley, Jr., Tallahassee, for Appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Anne E. Sheer, Assistant Attorney General, Tampa, for Appellee.
CAMPBELL, Acting Chief Judge.
Appellant, John Childers, convicted in 1996 of the 1983 first degree murder of Debbie Childers, his wife, challenges his conviction. He argues that the court erred in refusing to instruct the jury on lesser included offenses and that the court erred in denying his motion for a judgment of acquittal. We find no merit in either claim and affirm.
We first address whether the court erred in refusing to instruct the jury on lesser included time-barred offenses. Due to the passage of time between the commission of the offense and appellant's arrest, it appeared at trial that the statute of limitations prevented appellant from being charged with any lesser offense other than first degree murder. While a defendant may choose to waive his statute of limitations defense so that the court may instruct the jury on any lesser-included offenses, in order for such a waiver to be proper and effective, the court must be satisfied that the defendant himself, personally, appreciates the right he is renouncing and is aware of the potential consequences of his decision. The waiver is effective only if the court makes a determination on the record that the waiver was knowingly, intelligently and voluntarily made, was made for the defendant's benefit and after consultation with counsel, and does not handicap the defense. See Tucker v. State, 459 So.2d 306 (Fla.1984).
When appellant here was given the opportunity to waive his statute of limitations defense so that the jury could be instructed on the lessers, he indicated that while he wanted the lesser instructions given, he expressly refused to waive his statute of limitations defense. However, one cannot have his cake and eat it too. Appellant could not have the jury instructed on time-barred lessers and then, by refusing to waive the statute of limitations defense, claim that any subsequent conviction was barred. Given appellant's express refusal to waive the statute of limitations defense, we conclude that the court did not err in refusing to instruct the jury on time-barred lesser included offenses. Neither Beck v. Alabama, 447 U.S. 625, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980), nor Eaddy v. State, 638 So.2d 22 (Fla.1994), apply because appellant expressly opted not to waive the statute of limitations defense.
Next, we address whether the court erred in refusing to grant appellant's motion for a judgment of acquittal on the issue of premeditation. A motion for a judgment of acquittal should not be granted unless there is no view that the jury may take of the evidence that is favorable to the State. See Lynch v. State, 293 So.2d 44, 45 (Fla.1974).
Premeditation has been defined as "a fully formed and conscious purpose to take human life, formed upon reflection and deliberation, entertained in the mind before and at the time of the homicide." McCutchen v. State, 96 So.2d 152, 153 (Fla.1957). Given the evidence presented, there was clearly a view that the jury could take that supported a finding of premeditation.
At trial, David Bonsall, a sergeant with the Lee County Sheriff's Office, testified that on November 9, 1983, the victim's body was found in a septic tank at the back of the mobile home residence of appellant and the victim. Appellant could not be located. Their six-year-old child, Ed Childers, was found in Jacksonville with an older brother. A neighbor, Clarence Manning, testified that he heard screaming coming from the trailer on the morning of the offense. After the screaming stopped, he saw the child, Ed Childers, running in the yard and screaming, "Don't hurt me daddy" and "don't kill my mama." Later in the day, he saw appellant leave in his pickup truck with a third person. Clarence's wife, Barbara Manning, corroborated her husband's testimony. *433 James Kenney, who was living with Clarence and Barbara Manning, also corroborated their testimony. Florence Orth, another neighbor, also corroborated the testimony of Clarence Manning and Barbara Manning regarding the screaming coming from the trailer.
Marilyn Miller, a forensic chemist with the Lee County Sheriff's Office in 1983, testified that a swab test on a hammer found on the premises was positive for blood, but she could not tell if it was human or animal blood. Samuel Johnson, an investigator with the medical examiner's office, was qualified as an expert in blood splatter analysis. He testified that the pattern of blood stains found in the trailer was consistent with someone being struck with a blunt force object. Wallace M. Graves, the District Medical Examiner who performed the autopsy on the victim, testified that he found head wounds caused by severe blows to the head, and that the cause of death was physical and/or mechanical trauma.
Jerry Edward Childers, appellant's older son, testified that appellant came to his house in Jacksonville with appellant's younger son, Ed Childers, and another man on November 6, 1983. Appellant told him that he and the victim had a fight and that he had left with the child. The next morning, appellant had left, and the child was still there. Jerry Childers did hear from appellant again. Debra Craig, appellant's daughter, testified that she had a telephone conversation with appellant on November 7, 1983, and he told her he'd had a fight with the victim and "he'd slapped her around a bit."
James Brymer testified that he worked for appellant in 1983. He drove with appellant to Jacksonville after the incident on Sunday morning, November 6, 1983. On Saturday evening, he had been out to several bars with appellant and the victim, and they had both been drinking. Appellant later purchased an I.D. from a hitchhiker named George Cook. Carry Brymer, the ex-wife of James Brymer, testified that she saw appellant and James Brymer in Texas in 1983, and appellant told her that the victim was "messing around with another man."
The neighbor, Mr. Kenney, testified that three to four weeks before the murder, appellant had asked Mr. Kenney how long it would take for something to deteriorate in a septic tank. He also testified that he had heard appellant say that if he ever discovered that his wife, the victim, was involved with another man, he would "do her in." There was also testimony from appellant and the neighbors that the victim was planning to return to a former lover and that appellant did not want her to go.
Appellant's six-year-old son, Edward Childers, testified that he remembered a fight and his mother falling down. He also remembered seeing blood "pretty much everywhere" and remembered his father cleaning it up.
The evidence established that victim was attacked for what neighbors estimated to be about ten minutes. She was hit on the head with a hammer three times. Appellant's small son was seen running from the trailer screaming and begging appellant not to hurt him or his mommy. The parties had apparently had numerous previous altercations according to the neighbors' testimony. The nature and manner of the victim's wounds was apparently horribly shocking. One neighbor said the inside of the trailer looked like a slaughterhouse.
These factors support the jury's finding that the murder was committed with premeditation, as defined in McCutchen. This case is unlike Norton v. State, 709 So.2d 87 (Fla.1997), which was cited by appellant as controlling. In Norton, there was no evidence of motive, no evidence of a continuing attack, no evidence of other wounds or injuries, no indication of previous problems, and no evidence that the defendant intended to kill the victim. By contrast, here, there was evidence of motive, continuing attack, several other wounds and previous problems between the parties. Additional evidence showed that appellant intended to kill the victim. Finally, there was also evidence from which the jury could conclude that appellant planned to hide the victim's body in the septic tank.
We conclude that there was sufficient evidence favorable to the State to support the *434 jury finding of premeditation. Accordingly, the court did not err in refusing to grant appellant's motion for a judgment of acquittal on the issue of premeditation.
Affirmed.
BLUE and NORTHCUTT, JJ., concur.