On original deliverance, I did not write an opinion expressing the reasons for my dissent. The State has filed an application for rehearing, and I now take this opportunity to express (1) why I think the judgment of the Court of Criminal Appeals should be affirmed and (2) why this court's opinion, as written, will not provide the proper guidance to the Bench and Bar insofar as closing arguments are concerned.
I dissented because I thought, as did the Court of Criminal Appeals, that the prosecutor's comments were a reply in kind to *Page 1266 
improper remarks made by defense counsel during arguments at the sentencing phase of petitioner's trial. In order to gain a clear understanding of what actually was stated by defense counsel and the prosecuting attorney during the closing arguments, I am including portions of the trial record in this dissenting opinion so that the disputed comments can be analyzed in their proper context.
The prosecutor argued during the initial part of his closing argument that the fact that Rutledge committed this murder while he was out on parole established that he could not be rehabilitated. The State's remarks on the subject were as follows:
 "You have heard talk about this defendant being in prison and on Work Release. What does that tell you? It tells you, first of all, that this defendant cannot be rehabilitated. He has had his opportunity. He has been in prison; he's been on Work Release. Yet, there he sits today, guilty of capital murder while on parole."
In response, the following is what defense counsel said:
 "One last comment to what Mr. Myers said, and I think I'll talk about it a little bit more later on; but I want to talk about it now, while it is fresh on my mind, and probably while it is still fresh on your minds. The position of the District Attorney's office, their position is that Mitch can't be rehabilitated. I don't know whether that's true or not, but even if that's true; even if there is not a chance in the world, that's no reason for you to vote for him to die because our legislature has said that if somebody commits capital murder, or a capital offense, is that the only other sentence that you can give him is life without parole.
 "That's life without parole; there's no parole, no way. That's it. Mitchell will spend the rest of his life down at Holman Station, Alabama, in a lockup by himself, isolated with those others that are sentenced to life without parole. That is where he is going to spend the rest of his life, so whether you think he is going to be rehabilitated or not, that doesn't really matter right now. That shouldn't help you decide, because he is going to be in that cell for the rest of his life. He will not be paroled."
(Emphasis added).
Near the end of his closing argument, defense counsel began listing the reasons commonly advanced for the death penalty and argued that each reason did not justify the death penalty in this case. After first arguing that deterrence was no reason to impose the death penalty because, in his opinion, capital punishment did not deter, defense counsel continued as follows:
 "What's the second reason for giving capital punishment in this case, or any case? For the protection of society. God knows, we need it. That's why you are here. But the death sentence in this case will not protect society anymore than your other choice, life without parole; because Mitchell will spend the rest of his natural life behind bars. There is no chance that he is going to commit such an offense again, even if you all think that he would if he were given a chance. Society will be protected and you don't need to return a sentence of death to fulfill your civic duty that way. That will be taken care of by the Legislature, and that's why they provided the next most serious punishment to death, life without parole, as an alternative." (Emphasis added.)
Thereafter, the prosecutor made the following remarks during his rebuttal:
 "I don't think that any of you doubt for one minute that this man killed Gable Holloway because he wanted to, he intended to because he was going to make sure that he was dead. And then you heard Mr. Balske telling you what they wanted for this defendant, is life without parole. Mr. Balske told you because with that sentence there is no chance of him ever doing anything like this again and him spending the rest of his life in prison, because that is what `life without parole' means, and there is no *Page 1267 chance that he will get out. That's what Mr. Balske told you.
 "Ladies and gentlemen of the jury, that remark scares me to death. I'm not sure that there is anything such as life without parole —
 "MR. BALSKE: Objection, Your Honor, and may we approach the bench?
 "MR. MYERS: I've got the right to respond in kind, Mr. Balske opened this up.
 "(Whereupon, the following proceedings were had at the bench, inside the presence but outside the hearing of the jury.)
 "MR. BALSKE: I'm going to make a Motion in limine, and a Motion for a Mistrial, if he goes on and starts talking about clemency or any of that crap.
 "MR. MYERS: All I said was that I didn't know if there was such a sentence as life without parole.
 "THE COURT: Well, I'm not going to let him argue what I might do or what the Governor might do or somebody else, with regard to clemency; but you did argue that he would be there forever —
"MR. MYERS: Exactly.
 "THE COURT: — So, I think, in turn, that he could argue that he may not be there forever.
 "I'm not saying under the law — yes, under the law he is sentenced to life without parole, but you argued that he would be locked up forever, and he has the right to argue that he may not be locked up forever.
"MR. BALSKE: Is that what you're going to do?
 "MR. MYERS: Right. You opened up the door and I think I have a right to go through it.
 "THE COURT: So, I am denying your Motion for a Mistrial.
"[RESUME FINAL CLOSING ARGUMENT BY MR. MYERS:]
 "MR. MYERS: Life without parole. Mr. Balske came up and told you that there is no chance that he would ever get out again. I submit to you, ladies and gentlemen, that you can apply your own common sense to that statement. I submit to you that, as long as there are parole boards, as long as there are Federal Courts in the State of Alabama, and as long as the Legislature of the State of Alabama still exists, there is a chance that this defendant will get out, so do not be misled for a minute; and I don't think that you were when this man gets up and tells you that there is just no chance that he will ever get out. You know better than that, and that's what scares me about life without parole or what it is supposed to be. Life without parole." (Emphasis added.)
The majority found the prosecutor's remarks were an improper reply in kind since the defense counsel's remarks, to which the state was responding, were "properly premised upon the law of the case." I disagree.
It is true that under existing law defendants sentenced to life without parole cannot be paroled. If defense counsel had stuck to the simple statement that life without parole means life without parole, his argument would not have been open to the retaliatory remarks of the prosecutor; however, what defense counsel actually argued was that there was "no way" the defendant would ever be paroled, and he predicted that he would spend the rest of his life behind bars, because "[h]e will not be paroled." In judging whether this argument was open to reply, the crucial fact is that defense counsel did not say that under existing law or the law as it now stands appellant would never be paroled. Instead, he went outside the record and outside any knowledge now possessed by anyone and said: "He will not be paroled."
That statement predicts the future. It at least implicitly argues that Alabama law will never be changed by the legislature or by the state or federal judiciary to permit appellant to be paroled. Neither defense counsel nor anyone else knows if that is true.
Defense counsel's prediction of the future certainly is not a part of "the law of *Page 1268 
the case." The trial judge in this case did not instruct the jury that the law would never change and that if appellant was sentenced to life without parole it would be factually impossible for him to ever be paroled. Such instructions should never be given, because neither I nor any other mortal can foretell the future, especially when that future will be controlled by legislatures and courts.
It is true that under existing law inmates serving life without parole cannot be paroled. That is, in effect, what the trial judge instructed the jury. If defense counsel had stuck to that proposition, his argument would have been a legal and permissible argument; however, when defense counsel left the realm of what is now, and argued his own personal opinion about what would be in the future, he opened himself up to legitimate reply argument by the prosecutor. The prosecutor was entitled to argue in reply, as he did, that the future could not be foretold with certainty, as defense counsel assumed, and that any number of events could occur to undermine defense counsel's prediction. Everything the prosecutor said was true and related to defense counsel's improper prediction.
In my opinion, this Court should hold that defense counsel, in a capital case, has a choice. He can discuss aggravating and mitigating circumstances, and the law as it presently exists, and confine the prosecutor accordingly, or he can go into what he thinks the law will be in the future and let the prosecutor reply. Either way, it is fair. The only unfair approach is the one this Court has adopted — to let defense counsel go outside the record and speculate that there will be no changes in the law without allowing the prosecutor to reply in kind. That holding is grossly unfair and is contrary to current precedent.
The exact issue presented here was raised in Boggan v. State,455 So.2d 228 (Ala.Crim.App. 1984). In Boggan, the defendant was convicted of intentionally killing a victim during a robbery. The judge commuted defendant's sentence to life without parole. Defendant was granted a new trial under Beck v.Alabama, 447 U.S. 625, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980).Boggan v. State, 403 So.2d 328 (Ala.Crim.App. 1981). At the second trial, Boggan was sentenced to life imprisonment without parole. On appeal, the Court of Criminal Appeals opined:
 "The appellant alleges reversible error was committed when the prosecution commented, during closing arguments, on the possibility of the sentence of life without parole being changed someday in the future.
 "During the appellant's attorney's closing argument he stated:
 "`The punishment, as you have been told, for capital murder is life without parole. And the courts have said that clearly means, that he will be imprisoned — he was 22; he's 26 now — that he will be in prison when he is 60 years old for the acts of one night of his life.'
 "On rebuttal, the State made the following comments:
 "`Life without parole today is life without parole, but we never know whether the law could change in ten years or twenty years.
"`MR. ANDREWS: I object to that, Judge.
"`MR. GOMANY: He went into all that, Judge.
 "`THE COURT: I'm going to overrule your objection.'
 "This court has held on many occasions that in order to determine whether the above statement of the prosecutor was improper, `it must be examined in its context and in light of what had transpired, that is, in light of preceding argument of defense counsel, to which the prosecutor's argument was an answer.' Washington v. State, 259 Ala. 104, 65 So.2d 704
(1953); Gibson v. State, 347 So.2d 576
(Ala.Crim.App. 1977); Rutledge v. State, [482] So.2d [1250] (Ala.Crim.App. 1983). The rule in Alabama is that `remarks or comments of the prosecuting attorney, including those which might or otherwise be improper, are not grounds for reversal when they are invited, provoked, *Page 1269 
or occasioned by accused's counsel and are in reply to or retaliating for his acts and statements.' Shewbart v. State, 33 Ala. App. 195, 32 So.2d 241, cert. denied, 249 Ala. 572, 32 So.2d 244 (1947); Camper v. State, 384 So.2d 637 (Ala.Crim.App. 1980), cert. denied, 401 So.2d 167 (Ala. 1981), cert. denied, 454 U.S. 1057, 102 S.Ct. 606, 70 L.Ed.2d 595
(1981); Miller v. State, 431 So.2d 586 (Ala.Crim.App. 1983); Rutledge v. State, supra.
 "This record reflects that the prosecutor's argument was merely a reply in kind to the appellant's counsel's argument concerning punishment. Therefore, the prosecutor's argument was not improper."
Boggan at 237-38 (citations to trial record omitted). While it can be argued that the statements in the Court of Criminal Appeals' opinion are dicta because Boggan had been sentenced to life without parole (see Jones, J., concurring specially), nevertheless, that court's opinion in Boggan correctly states the law applicable to the situation being addressed in this case.
As stated in the Boggan case, it is well settled that in reviewing the propriety of the prosecutor's remarks they "must be viewed in [their] context and in the light of what had transpired," that is, in light of "the preceding argument of defense counsel to which [the prosecutor's] argument was an answer." Washington v. State, 259 Ala. 104 at 106, 65 So.2d 704
(1953). Again, defense counsel went beyond the law of the case by making such comments as:
 "But the death sentence in this case will not protect society anymore than your other choice, life without parole. . . . There is no chance that he is going to commit such an offense again, even if you all think that he would if he were given a chance. Society will be protected and you don't need to return a sentence of death to fulfill your civic duty that way. . . ."
All of the defense counsel's remarks must be viewed together, since all of his statements were made in one continuous argument during his closing remarks. These statements opened the door for the prosecutor, in rebuttal, to reply in kind to defense counsel's remarks, and, thus, the trial court's denial of defense counsel's motion for mistrial on this point was proper.
A trial court's ruling on a motion for a mistrial is reviewable on appeal. Stennett v. State, 340 So.2d 65 (Ala. 1976). However, the motion is addressed to the sound discretion of the trial judge, and his ruling will not be reversed in the absence of a clear showing of abuse of discretion. Shadle v.State, 280 Ala. 379, 194 So.2d 538 (1967); Heard v. State,351 So.2d 686 (Ala.Cr.App. 1977).
Based on the foregoing, I respectfully dissent.