# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

**F I L E D**
May 12, 2011

No. 09-70024

RONNIE PAUL THREADGILL,

Petitioner - Appellant

v.

RICK THALER, DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL JUSTICE, CORRECTIONAL INSTITUTIONS DIVISION,

Respondent - Appellee

---

Appeal from the United States District Court
for the Northern District of Texas

---

Before DAVIS, SMITH, and DENNIS, Circuit Judges.

PER CURIAM:[*]

Ronnie Paul Threadgill was convicted of capital murder and sentenced to death in a Texas state court. The jury found that he shot and killed seventeen-year-old Dexter McDonald while carjacking the vehicle in which McDonald was a passenger. After exhausting state remedies, Threadgill filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254 in the United States District for the Northern District of Texas. The district court denied relief, but granted him a certificate of appealability ("COA") on his claim "that

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 09-70024

he was denied effective assistance of counsel under the Sixth and Fourteenth Amendments when his trial counsel failed to adequately investigate and challenge the State's use of an extraneous offense" during the punishment phase of his trial.  Threadgill appealed and seeks a COA as to two additional issues: (1) "[w]hether [he] was denied effective assistance of counsel under the Sixth and Fourteenth Amendments [when his] trial counsel failed to request a lesser-included offense instruction on felony murder" and (2) "[w]hether [he] was denied due process of law when the trial court failed to charge the jury on the lesser-included offense . . . of felony murder."[1]  We deny his request for a COA and affirm the district court's judgment denying him any relief.

**I.**

On April 14, 2001, three young men walked out of a nightclub in Navarro County, Texas, and got into a car.  Kevin Williams sat in the front passenger seat, and Dexter McDonald sat in the right rear passenger seat.  Christopher Lane, the car's owner, got into the driver's seat but then got back out to talk to someone.  Shortly thereafter, Ronnie Threadgill, the petitioner, ran up and fired two shots from a handgun.  The first shot did not hit anyone.  The second shot hit McDonald.  The bullet passed through McDonald's arm and went into his chest.  Williams got out of the car.  Threadgill got into the driver's seat and began to drive away, but he then stopped at a nearby stop sign, pulled McDonald out of the car, left him on the ground, and got back in the car and drove away.  McDonald was taken to a hospital, where he died from the gunshot wound.

Threadgill was charged under Texas's capital murder statute, Texas Penal Code § 19.03(a)(2).  At trial, Williams testified that the first shot was fired from outside the car, and that when the second shot was fired, the

---

[1] Br. in Supp. of Mot. for Certificate of Appealability 1.

shooter "was standing outside the car, bent over into the car."  Danyel Nellums, who was nearby when the shooting happened, testified that McDonald was intoxicated and was sitting in the back seat with his head leaning against the window frame.  Nellums specifically denied defense counsel's suggestion that McDonald was lying down or stretched out on the seat.

Threadgill's defense counsel did not request a jury instruction on felony murder,[2] and the district court did not give such an instruction.  The jury convicted Threadgill of capital murder.

During the punishment phase of the trial, the prosecution introduced a variety of evidence tending to show that Threadgill would pose a future danger to society.  *See* Tex. Code Crim. Proc. art. 37.071, § 2(b)(1).[3]  Ten witnesses, nine of whom were law enforcement officers or public officials, testified that they knew of Threadgill's reputation in the community for being peaceful and law-abiding and that it was "bad" or "very bad."  The prosecution established that Threadgill had prior misdemeanor convictions for assault, resisting arrest, theft, criminal trespass, criminal mischief, and possession of marijuana, as well as prior felony convictions for possession of cocaine and

---

[2] Felony murder, under Texas Penal Code § 19.02(b)(3), occurs when a person "commits or attempts to commit a felony, other than manslaughter, and in the course of and in furtherance of the commission or attempt, or in immediate flight from the commission or attempt, he commits or attempts to commit an act clearly dangerous to human life that causes the death of an individual."  Felony murder is distinct from capital murder in that it does not require the intent to kill and does not carry the death penalty.

[3] At the punishment phase, to determine whether Threadgill would receive a sentence of death or life imprisonment without parole, the jury first had to decide "whether there [was] a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society."  Tex. Code Crim. Proc. art. 37.071, § 2(b)(1). The state bore the burden of proving this issue beyond a reasonable doubt.  *Id.* § 2(c).  Second, the jury had to decide "[w]hether, taking into consideration all of the evidence, . . . there is a sufficient mitigating circumstance or circumstances to warrant that a sentence of life imprisonment without parole rather than a death sentence be imposed."  *Id.* § 2(e)(1).  These two questions are commonly known as the special issues of future dangerousness and mitigation.

burglary.  Threadgill, who was 29 years old at the time of trial, had been incarcerated for most of the time since he had turned 18.  During his incarceration, according to law enforcement officers who testified at sentencing, Threadgill had (1) gotten into a fight with another inmate; (2) been disciplined for threatening other inmates; and (3) been found wearing the wrong color jumpsuit, which could have made it easier for him to escape.

Of particular relevance to the issue on which the district court granted a COA, the prosecution also introduced two witnesses' testimony indicating that Threadgill had committed a previous shooting in Limestone County, Texas.  Threadgill had been charged with aggravated assault in connection with that shooting, and spent approximately a year in jail before the charges were dropped by the county attorney.  The motion for dismissal, which was introduced into evidence, cited "conflicting evidence" as the reason for dropping the charges.  The prosecution called Cassey Leon Forge, who testified that he had seen Threadgill shoot Erik Martin in the Limestone County incident; that he had identified Threadgill as the shooter in a photo lineup; that he had given a statement to the police that Threadgill was the shooter; and that he was positive about his identification of Threadgill.  The prosecution also called Limestone County Sheriff's Department Chief Deputy R.T. Beck, Jr., who testified that he had investigated the shooting and that Forge was positive in his identification of Threadgill and never recanted it.  Beck also testified that most of the victims and others involved in the Limestone County shooting incident had criminal records.  On cross-examination, the defense established that "conflicting evidence" was the stated reason why the charge against Threadgill had been dismissed.  Then, on redirect, the following exchange took place between the prosecutor and Beck:

> Q.    Do you have conflicting evidence in a lot of cases?

No. 09-70024

A.   Yes, sir.

Q.   Are all cases that have conflicting evidence, are they dismissed?

A.   No, sir, not that I'm aware of.

Q.   As much as we don't like to admit it, are sometimes cases dismissed because of the, who the victims are or what they've done in the past?

MR. DUNN [defense counsel]: Objection, your Honor, relevance.

THE COURT: I'll overrule the objection, although I'll, certainly the jury is free to draw its own conclusions with respect to whether the response to that question will be relevant. You may answer the question.

A.   Yes, sir, I think that's entirely possible.

The defense called three witnesses during the punishment phase. Threadgill's mother testified that he had grown up in very difficult circumstances involving poverty, instability, and violence. A clinical psychologist, Dr. Gilda Kessner, testified about the harmful psychological effects of Threadgill's troubled childhood. She also testified that he had generally behaved well in prison and that the few disciplinary incidents in which he had been involved were minor. And a Texas prison warden gave detailed testimony about the conditions under which Threadgill would be held if he were given a life sentence, suggesting that it was unlikely that he would ever be able to escape.

The prosecution called Dr. Lisa Clayton, a psychiatrist, to rebut Dr. Kessner. Dr. Clayton testified that in her opinion, "Mr. Threadgill will be a future danger to society." The state also called A.P. Merillat, an expert on prison violence, who testified that despite the security measures in place, there was still a significant level of violence within Texas prisons, thereby suggesting that Threadgill could be a future danger to society even if he never escaped from prison.

5

No. 09-70024

The prosecutor's closing argument put significant emphasis on the Limestone County shooting. He asserted that Threadgill had "shot another guy" and criticized "prosecutors who don't take these cases seriously and take them to juries." He stated that the victim in the Limestone County case was "probably nobody" and "probably had a criminal record" and implied that this was why the charge against Threadgill had been dropped. He urged the jury not to act similarly. The prosecutor also emphasized Dr. Clayton's opinion that Threadgill would be a future danger to society; predicted that he would likely commit future violent acts in prison; and argued that Threadgill's hard life was no excuse for murdering Dexter McDonald.

The jury was presented with the two statutory special issues of future dangerousness and mitigating circumstances. *See* Tex. Code Crim. Proc. art. 37.071. The jury determined that (1) there was a probability that Threadgill would commit criminal acts of violence in the future that would constitute a continuing threat to society, *see id.* § 2(b)(1); and (2) there were no mitigating circumstances sufficient to spare Threadgill from a sentence of death, *see id.* § 2(e)(1). The trial court accordingly sentenced Threadgill to death.

On direct appeal, Threadgill argued, inter alia, that the trial court should have given a jury instruction on the lesser included offense of felony murder. The Texas Court of Criminal Appeals ("TCCA") rejected this argument, explaining its reasoning as follows:

> The element distinguishing capital murder from felony murder is the intent to kill. [*Fuentes v. State*, 991 S.W.2d 267, 272 (Tex. Crim. App. 1999).] Felony murder is an unintentional murder committed in the course of committing a felony while capital murder includes an intentional murder committed in the course of robbery. *Id.* To be entitled to an instruction on felony murder there must be some evidence that would permit a jury rationally to find the defendant had the intent to commit robbery but not to cause the death of the victim. The evidence reflects that appellant ran up to the car, leaned in, and fired two shots,

6

No. 09-70024

the second one into the backseat where the victim was seated. Appellant argues that some evidence suggests that the shooter did not even know that the victim was in the car, claiming Kevin Williams testified that the shots were fired from outside the car and that there was testimony that the victim was "slumped over" in the backseat.  A closer look at the portion of Williams' testimony relied upon by appellant reflects that Williams did *not* testify the shots were fired from outside the car:

[Prosecutor].  Okay.  You said he got into the front seat and you were still in the car.

[Williams].  He hadn't got into the car yet.

Q.  You said a gun was in your face?

A.  Uh-huh.

Q.  And you were sitting in the car.  Was he standing outside the car pointing a gun in your face?

A.  He was standing outside the car, bent over into the car.

Although the shooter was standing outside of the car when he fired the shots, he was leaning into the car with his gun. Citing two pages of testimony, appellant also claims the evidence reflects that the victim was "slumped over" on the backseat. Review of that portion of the testimony reflects that the victim was intoxicated and was sitting in the backseat with his head leaning against or resting on the window frame.  The witness [Nellums] denied defense counsel's suggestion that the victim was lying down or stretched out on the seat.  The trial court did not abuse its discretion in concluding that there was no evidence that would permit a jury rationally to find that appellant did not intend to kill the victim when he fired at him at close range inside the car.

*Threadgill v. State*, 146 S.W.3d 654, 665-66 (Tex. Crim. App. 2004).

Threadgill did not seek a writ of certiorari from the United States Supreme Court.

Concurrent with his direct appeal, Threadgill applied for a writ of habeas corpus in state court.  He argued, inter alia, that he had received ineffective assistance of counsel because his attorneys had failed to request a

jury instruction on felony murder and because they had failed to investigate and rebut the prosecution's evidence concerning the Limestone County shooting. He contended that if his attorneys had reasonably investigated the Limestone County matter, they could easily have found multiple eyewitnesses who would have testified that he was not the shooter. The state trial court's findings of fact and conclusions of law rejected Threadgill's claims. The court determined that a felony murder instruction was not warranted by the evidence; that Threadgill's trial counsel acted appropriately by not focusing their efforts on rebutting the prosecution's evidence concerning the Limestone County shooting; and that that evidence "was so insignificant in light of the entire body of evidence that its admission did not prejudice [Threadgill]." The TCCA adopted the trial court's findings and conclusions and denied relief.

Threadgill then filed a timely petition for a writ of habeas corpus in federal court. The district court denied relief. Threadgill has filed a motion for a COA as to two issues: (1) "[w]hether [he] was denied effective assistance of counsel under the Sixth and Fourteenth Amendments [when his] trial counsel failed to request a lesser-included offense instruction on felony murder" and (2) "[w]hether [he] was denied due process of law when the trial court failed to charge the jury on the lesser-included offense . . . of felony murder." Threadgill has also appealed concerning the one issue on which the district court granted a COA: his claim "that he was denied effective assistance of counsel under the Sixth and Fourteenth Amendments when his trial counsel failed to adequately investigate and challenge the State's use of an extraneous offense" during the punishment phase of his trial.

## II.

"A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). In order to make such a showing, "a petitioner must show that

8

reasonable jurists could debate whether (or, for that matter, agree that) the petition could have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

A federal court "may not issue a writ of habeas corpus for a defendant convicted under a state judgment unless the adjudication of the claim by the state court '(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding.'" *Riddle v. Cockrell*, 288 F.3d 713, 716 (5th Cir. 2002) (quoting 28 U.S.C. § 2254(d)).

"In a habeas corpus appeal, we review the district court's findings of fact for clear error and review its conclusions of law de novo, applying the same standard of review to the state court's decision as the district court." *Martinez v. Johnson*, 255 F.3d 229, 237 (5th Cir. 2001) (quoting *Thompson v. Cain*, 161 F.3d 802, 805 (5th Cir. 1998)).

A petitioner bringing a claim of ineffective assistance of counsel "must demonstrate both that: (1) his counsel's performance was deficient; and (2) counsel's deficient performance prejudiced his defense." *Harrison v. Quarterman*, 496 F.3d 419, 424 (5th Cir. 2007) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). "Counsel's performance is deficient if it 'fell below an objective standard of reasonableness.'" *Id.* (quoting *Strickland*, 466 U.S. at 688). "Judicial scrutiny of counsel's performance must be 'highly deferential.'" *Id.* (quoting *Strickland*, 466 U.S. at 689). "Deficient performance results in prejudice when 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a

No. 09-70024

probability sufficient to undermine confidence in the outcome.'" *Id.* (quoting *Strickland*, 466 U.S. at 694). "The result of a proceeding can be rendered unreliable, and hence the proceeding itself unfair, even if the errors of counsel cannot be shown by a preponderance of the evidence to have determined the outcome." *Strickland*, 466 U.S. at 694.

## III.

Threadgill seeks a COA as to his claim that he received ineffective assistance of counsel because at trial, his lawyers failed to request a jury instruction on felony murder as defined by Texas Penal Code § 19.02(b)(3). Felony murder is not a capital crime, and (as the state acknowledges) is a lesser included offense of the type of capital murder with which Threadgill was charged under Texas Penal Code § 19.03(a)(2). Capital murder under § 19.03(a)(2) occurs when "the person intentionally commits the murder in the course of committing or attempting to commit" one of several enumerated crimes, including robbery. Felony murder under § 19.02(b)(3) takes place when a person "commits or attempts to commit a felony, other than manslaughter, and in the course of and in furtherance of the commission or attempt, or in immediate flight from the commission or attempt, he commits or attempts to commit an act clearly dangerous to human life that causes the death of an individual." The difference between felony murder and capital murder, as relevant here, is that a capital murder must have been "intentionally" committed, per § 19.03(a)(2), whereas felony murder under § 19.02(b)(3) does not require the killing to have been intentional. Thus, "[t]he element distinguishing capital murder from felony murder is intent to kill." *Threadgill*, 146 S.W.3d at 665 (citing *Fuentes*, 991 S.W.2d at 272).

Threadgill cannot have received ineffective assistance of counsel on this issue unless the evidence at trial would have actually warranted a felony murder instruction. "A defendant is entitled to [a lesser included offense]

10

instruction if the jury could rationally acquit the defendant on the capital crime and convict on the non-capital crime." *Aguilar v. Dretke*, 428 F.3d 526, 531 (5th Cir. 2006). Under Texas law, for a lesser included offense instruction to be given, "there must be some evidence in the record that if the defendant is guilty, he is guilty only of the lesser offense." *Richards v. Quarterman*, 566 F.3d 553, 568 (5th Cir. 2009). "Anything more than a scintilla of evidence is sufficient to entitle a defendant to a lesser charge." *Ferrel v. State*, 55 S.W.3d 586, 589 (Tex. Crim. App. 2001).

Threadgill has identified four facts (or purported facts) which, he argues, provided an evidentiary basis so that the jury could have rationally concluded that he was guilty only of felony murder and not capital murder. However, these asserted facts either are not supported by the record or else fail to support a finding that Threadgill was guilty only of felony murder, i.e., that he lacked the intent to kill McDonald.

First, Threadgill highlights that Williams, the other passenger in the car, was not shot. Williams was sitting in the front passenger seat of the car, but he jumped out when Threadgill started shooting. It is unclear whether Threadgill may have intended to shoot Williams, considering that he fired two shots, only one of which hit McDonald. But even if Threadgill did not intend to shoot Williams, that would not mean he lacked the intent to kill McDonald.

Second, Threadgill asserts that "the victim was shot only one time, in the arm, when he could have been shot multiple times." This is a misleading characterization of the facts because although the bullet first went through McDonald's arm, it then entered his chest, causing his death. Therefore, the location where McDonald was hit by the bullet does not suggest that Threadgill was not trying to kill him. Moreover, under Texas law, "where a deadly weapon is fired at close range and death results the law presumes an

intent to kill." *Womble v. State*, 618 S.W.2d 59, 64 (Tex. Crim. App. 1981). "It is both a common-sense inference and an appellate presumption that a person intends the natural consequences of his acts, and that the act of pointing a loaded gun at someone and shooting toward that person at close range demonstrates an intent to kill." *Ex parte Thompson*, 179 S.W.3d 549, 556 n.18 (Tex. Crim. App. 2005).[4]  Threadgill fired a handgun at McDonald at close range, from within the car, and hit him once; the bullet went through his arm and into his chest, causing his death. This sequence of events provides no basis for concluding that Threadgill did not intend the natural consequence of his action, which was McDonald's death.

Third, Threadgill claims that "there was some evidence from which a rational jury could have concluded that [he] was unaware of Mr. McDonald's presence in the back of the car." The TCCA addressed this argument on direct appeal and determined that there was no such evidence: "[T]he testimony reflects that the victim was intoxicated and was sitting in the backseat with his head leaning against or resting on the window frame. The witness denied defense counsel's suggestion that the victim was lying down or stretched out on the seat." *Threadgill*, 146 S.W.3d at 665-66. Threadgill's briefs fail to identify, and we have not found, any evidence in the record that would indicate that the TCCA's characterization of the facts was incorrect.

Fourth, Threadgill argues that "McDonald[] was put out of the stolen car, alive, in sight of those who could come to his aid." But this does not change the fact that Threadgill shot at McDonald at close range. Moreover, the fact that Threadgill apparently preferred not to have McDonald with him

---

[4] *See also Godsey v. State*, 719 S.W.2d 578, 581 (Tex. Crim. App. 1986) ("If a deadly weapon is used in deadly manner, the inference is almost conclusive that he intended to kill. . . . Naturally, the most obvious cases and the easiest ones in which to prove a specific intent to kill, are those cases in which a firearm was used and was fired or attempted to have been fired at a person.").

No. 09-70024

as he drove off in the stolen car has no bearing on whether he intended to kill McDonald when he shot him.

Therefore, none of Threadgill's factual assertions and arguments establish that there was even a scintilla of evidence from which a jury could have rationally concluded that Threadgill did not intend the natural consequence of his action — McDonald's death — when he shot McDonald in the chest at close range. Therefore, there is no reason why the trial court should, or would, have given an instruction on felony murder if Threadgill's counsel had requested one. Consequently, the failure to request a felony murder instruction does not fulfill either of the two requirements for a claim of ineffective assistance of counsel: it did not amount to deficient performance, and Threadgill was not prejudiced by it. It necessarily follows that the TCCA's denial of this claim of ineffective assistance of counsel was not "contrary to, or an unreasonable application of, clearly established [f]ederal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Nor was it "based on an unreasonable determination of the facts in light of the evidence presented in the [s]tate court proceeding." *Id.* § 2254(d)(2). We believe that this conclusion is not debatable among reasonable jurists. *See Slack*, 529 U.S. at 484. Therefore, we deny Threadgill's request for a COA on this issue.

## IV.

Threadgill argues that due process required the trial court, sua sponte, to give a jury instruction on the lesser included offense of felony murder, even though his counsel did not request it. This argument relies on *Beck v. Alabama*, 447 U.S. 625 (1980), in which the Supreme Court reasoned as follows:

> when the evidence unquestionably establishes that the defendant is guilty of a serious, violent offense — but leaves some doubt

with respect to an element that would justify conviction of a capital offense — the failure to give the jury the "third option" of convicting on a lesser included offense would seem inevitably to enhance the risk of an unwarranted conviction.

       Such a risk cannot be tolerated in a case in which the defendant's life is at stake.

*Id.* at 637. Two years later, the Court clarified in *Hopper v. Evans* that "due process requires that a lesser included offense instruction be given *only* when the evidence warrants such an instruction." 456 U.S. 605, 611 (1982).

Under *Beck* and *Hopper*, the trial court's failure to give a lesser included offense instruction cannot have been a denial of due process if such an instruction was not warranted by the evidence. For the reasons stated above, none of the four facts (or purported facts) cited by Threadgill provides even a scintilla of support for a finding that he did not intend to kill McDonald. Because the evidence did not warrant an instruction on felony murder, the lack of such an instruction was not a denial of due process. Therefore, the TCCA's rejection of this claim was neither contrary to, nor an unreasonable application of, clearly established federal law. *See* 28 U.S.C. § 2254(d)(1). We do not consider this conclusion to be debatable among reasonable jurists, *see Slack*, 529 U.S. at 484; accordingly, we deny Threadgill a COA on this issue.

## V.

Threadgill received a COA from the district court on the issue of whether he was given ineffective assistance of counsel when his trial attorneys failed to investigate and rebut the prosecution's evidence indicating that he had committed the Limestone County shooting.

Threadgill argues that his attorneys failed to consult obvious sources of information — including court files on the Limestone County shooting case, the attorney who had defended him in that case, and the prosecutor who

No. 09-70024

dropped the charges against him — which, if consulted, would have led them to strong evidence that he was innocent of the shooting, including three eyewitnesses who could have testified that he was not the shooter.  He argues that this deficiency in his attorneys' performance was similar to what occurred in *Rompilla v. Beard*, 545 U.S. 374 (2005), in which the Supreme Court held that defense attorneys were ineffective when they failed to uncover mitigating evidence that they could have easily found by looking at a readily available court file concerning the defendant's prior conviction.  The state counters that unlike the attorneys in *Rompilla*, Threadgill's attorneys did hire a private investigator to investigate the Limestone County shooting, and therefore their performance was not deficient despite the investigator's apparent failure to look at the court file or talk to the prosecutor or the defense attorney.

The district court refrained from deciding whether Threadgill's attorneys' performance was bad enough to amount to deficient performance as defined under *Strickland*.  Instead, the district court determined that Threadgill was not prejudiced by this failure on the part of his attorneys because there was a "mountain of adverse proof" against him on the future dangerousness issue.  We follow a similar approach.

The prejudice element of an ineffective assistance of counsel claim requires a claimant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.  A petitioner can establish prejudice "even if the errors of counsel cannot be shown by a preponderance of the evidence to have determined the outcome." *Id.*  Yet, under 28 U.S.C. § 2254(d), we may not grant habeas relief unless we conclude that the TCCA's determination that Threadgill was not prejudiced

15

No. 09-70024

was not "merely incorrect or unreasonable," but was "objectively unreasonable" in light of "clearly established law as determined by the Supreme Court." *Rogers v. Quarterman*, 555 F.3d 483, 488-89 (5th Cir.), *cert. denied*, 130 S. Ct. 365 (2009).

The prosecution used the evidence of the Limestone County shooting to persuade the jury that Threadgill posed a continuing threat to society. *See* Tex. Code Crim. Proc. art. 37.071, § 2(b)(1) (the court shall submit to the jury the issue of "whether there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society"). The prosecution was required to establish future dangerousness beyond a reasonable doubt. *Id.* § 2(c).

The Limestone County shooting was by far the most serious prior act that was introduced against Threadgill to demonstrate his future dangerousness. Despite the fact that the charge was officially dropped due to "conflicting evidence," the prosecutor's closing argument and examination of Deputy Beck undeniably encouraged the jury to believe that Threadgill's implication in the Limestone County shooting demonstrated his propensity for violence and anti-social conduct. If defense counsel had investigated more thoroughly, they might have presented multiple eyewitnesses whose testimony would have questioned Threadgill's culpability in that shooting. Thus, Threadgill's counsel missed the opportunity to raise serious doubts about what was arguably the most compelling element of the prosecution's future dangerousness argument.

However, in assessing whether Threadgill was prejudiced by his counsel's failure to adequately investigate and rebut the prosecution's evidence that he had committed the Limestone County shooting, we must take into account all of the evidence that was presented to the jury regarding Threadgill's future dangerousness. Although the Limestone County shooting

No. 09-70024

was a significant element of the prosecution's case during the punishment phase, the jury was aware that the charge against Threadgill had been dropped due to "conflicting evidence." Moreover, the prosecution also offered a substantial amount of other evidence of future dangerousness. The jury learned that Threadgill had previously been convicted of several offenses including assault, resisting arrest, burglary, and criminal mischief. The jury heard from a parade of public officials and law enforcement officers, each of whom testified that Threadgill had a "bad" or "very bad" reputation for being peaceful and law-abiding. The jury also heard Dr. Clayton's opinion that Threadgill would be a future danger to society. And, of course, the jury was familiar with the serious crime that is the basis of this case, in which Threadgill killed a seventeen-year-old boy in order to steal a car.

Threadgill's attorneys offered little evidence tending to show that he would not be a continuing threat to society. Threadgill's mother's testimony about his difficult childhood went to the issue of mitigating circumstances, not future dangerousness.[5] Dr. Kessner expressly did not address future dangerousness; she stated on cross-examination, "I wasn't asked to assess his future dangerousness. I was asked to look at the mitigation issues."[6] And, while the prison warden's detailed testimony about security measures tended to show that it was unlikely that Threadgill would escape if sentenced to life in prison, the warden also acknowledged that Threadgill might still commit violent acts while incarcerated. *See Estrada v. State*, 313 S.W.3d 274, 284

---

[5] The question of whether "there is a sufficient mitigating circumstance or circumstances to warrant that a sentence of life imprisonment without parole rather than a death sentence be imposed" is a separate and distinct issue that the jury must answer if it decides that the defendant would pose a future danger to society. Tex. Code Crim. Proc. art. 37.071, § 2(e)(1).

[6] Threadgill's lead trial counsel later explained, in an affidavit, that he chose not to ask Dr. Kessner to assess future dangerousness because he thought she would opine that Threadgill was likely to commit acts of criminal violence in the future.

17

(Tex. Crim. App. 2010) ("[T]he future-dangerousness special issue asks a jury to determine whether there is a probability that the defendant would constitute a continuing threat to society 'whether in or out of prison.'" (quoting *Muniz v. State*, 851 S.W.2d 238, 250 (Tex. Crim. App. 1993))), *cert. denied*, 131 S. Ct. 905 (2011).

In light of all the evidence presented at the punishment phase, it is possible that Threadgill's attorneys' failure to rebut the prosecution's evidence regarding the Limestone County shooting may have affected the jury's decision. However, considering the strength of the other evidence against Threadgill on the future dangerousness issue, we are not persuaded that the TCCA made an objectively unreasonable decision when it determined that there was not a reasonable probability of a different result if Threadgill's trial attorneys had performed more effectively. "For purposes of [28 U.S.C.] § 2254(d)(1), 'an *unreasonable* application of federal law is different from an *incorrect* application of federal law.'" *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011) (quoting *Williams v. Taylor*, 529 U.S. 362, 410 (2000)). "Even if [we] might have reached a different conclusion as an initial matter, it was not an unreasonable application of [Supreme Court] precedent for the [TCCA] to conclude that [Threadgill] did not establish prejudice." *Cullen v. Pinholster*, 131 S. Ct. 1388, 1411 (2011). Therefore, we affirm the district court's denial of relief.

## VI.

For the foregoing reasons, Threadgill's motion for a COA is DENIED, and the district court's decision to deny Threadgill a writ of habeas corpus is AFFIRMED.