

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

---

### NO. PD-0759-21

---

### JOSE JUAN CHAVEZ, Appellant

### v.

### THE STATE OF TEXAS

---

### ON STATE'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE FOURTEENTH COURT OF APPEALS
### CHAMBERS COUNTY

---

HERVEY, J., delivered the opinion of the Court in which RICHARDSON, NEWELL, WALKER, and MCCLURE, JJ., joined. NEWELL, J., filed a concurring opinion. KEEL, J., filed a concurring opinion in which KELLER, P.J., and SLAUGHTER, J., joined. YEARY, J., filed a dissenting opinion.

### **O P I N I O N**

This is a lesser-included offense case. Appellant was tried for capital murder based on the law of parties but requested lesser-included offense (LIO) instructions on kidnapping and felony murder. The trial court did not submit the instructions, and Appellant was convicted. On appeal, Appellant argued that the trial court should have given the instructions and that he was harmed by the trial court's failure to give them. The court of appeals agreed and ordered a new trial. Because we conclude that Appellant

was not entitled to the instructions, we will reverse the judgment of the court of appeals and affirm the judgment of the trial court.

## FACTS & PROCEDURAL HISTORY[1]

Appellant was indicted in connection with the kidnapping and murders of Jarvis Morgan (Jarvis) and Alejandro Chavez (Alejandro). The bulk of the evidence regarding the crimes came from the testimony of one of Appellant's accomplices, Brandon Flores (Brandon).

Brandon lived with Appellant in Baytown and worked out of their home as a barber. The night of the kidnappings, Jarvis and Alejandro went to Brandon's house to get their hair cut. Brandon was inside with Richard Gonzalez (Richard). Valentin Lazo (Valentin) and Appellant were outside. While Brandon was cutting Alejandro's hair, Jarvis brandished a gun and pointed it at Brandon to "show it off." An altercation ensued. Brandon jumped on Jarvis and wrestled the gun away from him, and Richard jumped on Alejandro.[2] According to Brandon, when Appellant came back inside, "I -- we decided that we had to take [the victims] out of there" to Appellant's grandmother's property in Anahuac.[3] When asked to clarify, Brandon testified that it was Appellant's idea to kidnap Jarvis and Alejandro and take them out there. Brandon, Richard, and Appellant directed

---

[1] We will use people's first names.

[2] During the investigation, Brandon told a police officer that the kidnappings were committed in self-defense because the victims were members of a gang. At trial, Brandon explained that Jarvis and Alejandro had disrespected Appellant's home.

[3] The property was between 8 and 10 acres. The back part of the property, where the victims were killed and their bodies left, was wooded.

Jarvis and Alejandro to a Nissan Altima, forced them into the trunk, and Appellant drove

to the Anahuac property. Brandon and Richard accompanied Appellant, while Valentin

followed in his truck. Upon arrival, Valentin broke the lock on the gate with his truck,

then the four gathered on the property to discuss what to do with Jarvis and Alejandro.[4]

Appellant told Brandon to take them to the back of the property and kill them, which

Brandon did. Later that evening, the group went to a convenience store in Anahuac,

where they were recorded by a security camera. They abandoned the Altima at an

apartment complex near Appellant's home. Days later, Brandon, Appellant, and another

person[5] returned to the property to dispose of the victims' bodies. They tied ropes

attached to cinder blocks around the bodies and dumped them into a nearby bayou.[6] The

police found the bodies two weeks later while searching the area when the tide was out.

Brandon fled to Mexico after the kidnappings and murders. He was extradited to the

United States about four years later.

During the investigation, Appellant told police that he was outside when the

victims were getting their hair cut and that, when he went inside, Jarvis and Alejandro

were gone. Appellant said that, afterwards, everyone left, and he went to sleep. When

---

[4] Appellant told police during the investigation that it was Richard's idea to kill the victims. At trial, he said that the group agreed to kill Jarvis and Alejandro "because they were gangsters."

[5] Flores testified that the person drove a black truck, and a police officer testified that Appellant's uncle had been implicated in the crimes and that he had access to a black truck during the time of the kidnappings and murders.

[6] There was evidence that virtually identical rope was recovered from Appellant's grandmother's property.

confronted with security footage of Appellant at a convenience store, he remembered that he went with Valentin to a convenience store down the street from his house. When confronted with the fact that the surveillance footage was from a Texaco in Anahuac, not down the street from his house, Appellant remembered that he and Valentin actually went to the Texaco to buy drinks. He said that he and Valentin drove around a lot and that Valentin liked to buy a particular fruit drink sold at that store. Appellant continued to deny that he was with anyone except Valentin even though he was told that the security footage showed him with other people.[7]

At the charge conference, Appellant requested LIO instructions on kidnapping and felony murder. The trial court denied the request, and the jury convicted Appellant of capital murder as a party. Appellant was sentenced to life imprisonment without the possibility of parole. Appellant subsequently filed a notice of appeal.

## COURT OF APPEALS

In a split decision, a majority of the court of appeals held that Appellant was entitled to the instructions. *Chavez v. State*, 651 S.W.3d 140, 146 (Tex. App.—Houston [14th Dist.] 2021). It reasoned that the jury could have rationally found Appellant guilty of only kidnapping or felony murder because some evidence showed that Brandon might have been the only one with the intent to kill the victims. *Id.* at 145. For example, Brandon said that "he alone drove complainants to the back of the property and killed

---

[7] At the interview, the investigators had printed screen shots from the security camera footage showing Valentin and Appellant together, but they had not printed screen shots showing that Appellant and Valentin were also with Richard and Flores.

them." *Id.* Further, the court of appeals believed that the jury could have rationally concluded that Appellant did not have the intent to kill if it believed Brandon's testimony that the killings were Richard's idea but disbelieved Brandon's testimony that the group agreed to kill Jarvis and Alejandro. *Id.*

Justice Wise would have affirmed the trial court's ruling. *Id.* at 147 (Wise, J., dissenting). He argued that, in analyzing what evidence a jury might or might not have believed, the majority failed to recognize that none of the evidence was germane to the LIOs because it did not rebut evidence of Appellant's intent to kill. *Id.* at 146. Justice Wise further argued that the jury could not have rationally inferred that Appellant did not have the intent to kill, as the majority did, based on evidence that Richard first conceived of the murders or that Brandon was the one who executed the victims. *Id.* at 147. He further noted that the only evidence rebutting or negating Appellant's intent to kill was the evidence that Appellant told police he was not involved in the kidnappings or murders. *Id.* But, as he noted, a defendant is not entitled to a LIO instruction based on claims of innocence. *Id.*

## DISCUSSION

### a. The Law

We review a trial court's refusal to submit a LIO instruction for an abuse of discretion. *See Threadgill v. State*, 146 S.W.3d 654, 666 (Tex. Crim. App. 2004). Whether a defendant is entitled to a LIO instruction turns on a two-part test. *Rousseau v. State*, 855 S.W.2d 666, 672 (Tex. Crim. App. 1993). First, we compare the statutory elements of the alleged lesser offense with the statutory elements of the greater offense

and any descriptive averments in the indictment. *Safian v. State*, 543 S.W.3d 216, 220 (Tex. Crim. App. 2018). If proof of the lesser offense is included within proof of the greater offense, the first step has been satisfied. *Id.*; TEX. CODE CRIM. PROC. art. 37.09(1). Second, there must be evidence from which a rational jury could find the defendant guilty of only the lesser offense. *Guzman v. State*, 188 S.W.3d 185, 188–89 (Tex. Crim. App. 2006). We have said that the guilty-only requirement is met if there is affirmative evidence of a factual dispute that raises the lesser offense and rebuts or negates other evidence establishing the greater offense. *Roy v. State*, 509 S.W.3d 315, 319 (Tex. Crim. App. 2017). It does not matter if the factual dispute is based on direct or circumstantial evidence so long as a rational jury could interpret the record in a way in which it could find the defendant guilty of only the lesser-included offense.[8] *See id.* (submission of manslaughter LIO instruction was supported by direct evidence—the appellant's testimony that he acted only recklessly); *Goad v. State*, 354 S.W.3d 443, 447-49 (Tex. Crim. App. 2011) (rejecting that affirmative evidence must be based on direct evidence and holding that circumstantial evidence supported a reasonable inference that the appellant did not have the intent to steal when he entered the complainant's home).

---

[8] Judge Keel argues in her concurring opinion that we should overrule over 45 years of our precedent dating back to at least 1974. Concurring Op. at 2 (Keel, J.). There are multiple reasons we decline the invitation. First, neither party asks us to overrule those cases. Second, we did not grant review of whether to overrule those cases. Third, we have no briefing on the matter. *Goad v. State*, 354 S.W.3d 443, 448 (Tex. Crim. App. 2011) (declining to resolve an issue because the Court did not grant review of it, resolving the issue was not essential to the outcome of the case, and the parties did not brief it); *Stringer v. State*, 241 S.W.3d 52, 59 (Tex. Crim. App. 2007) ("In our discretionary review capacity we review 'decisions' of the courts of appeals."). Fourth, overruling those cases is not essential to the disposition of this case. Our decision today is not radical and does not change LIO law in Texas. We merely conclude that the court of appeals misapplied the standard of review.

We consider all the evidence admitted at trial. *Goad*, 354 S.W.3d at 448. Even a scintilla of evidence is sufficient, no matter how controverted or incredible. *Id.* at 446-47. But the evidence must be directly germane to the LIO and present the LIO as a valid, rational alternative to the greater offense. *Id.* at 446. "[I]f the defendant presents evidence that he committed no offense at all . . . or if he presents no evidence . . . , and there is no evidence otherwise raising the issue, a charge on [a] lesser offense . . . is not required." *Aguilar v. State*, 682 S.W.2d 556, 558 (Tex. Crim. App. 1985) (citations omitted) (footnote omitted) (citing *McKinney v. State*, 627 S.W.2d 731 (Tex. Crim. App. 1982); *McCardell v. State*, 557 S.W.2d 289 (Tex. Crim. App. 1977); *Denison v. State*, 651 S.W.2d 754 (Tex. Crim. App. 1983); *Thomas v. State*, 543 S.W.2d 645 (Tex. Crim. App. 1976)); *Bignall v. State*, 887 S.W.2d 21, 24 (Tex. Crim. App. 1994).

## APPLICATION

We analyze only the second prong of the LIO test because there is no dispute that kidnapping and felony murder are LIOs under the first prong of the analysis, but we conclude that the second prong was not met here. We begin by addressing the State Prosecuting Attorney's (SPA) argument that the court of appeals decided the case based only on the fact that the jury could have rationally disbelieved evidence that the group agreed to kill the victims and that Appellant ordered Brandon to execute them. The SPA is correct that the mere disbelief of evidence establishing commission of the greater offense is insufficient by itself to justify submission of a LIO instruction. *Bignall*, 887 S.W.2d at 24. This is because the disbelief of evidence is not evidence. To the extent that

the court of appeals relied only on the jury's ability to disbelieve evidence in concluding that Appellant was entitled to the LIO instructions, it erred.

Appellant argues that he was entitled to the LIO instructions based on the following evidence:[9]

- Brandon's statement to police that he believed he was acting out of "self-defense" when kidnapping the victims because the victims were "gangsters;"

- Brandon's testimony that there was no plan to kill the victims when they kidnapped them;

- Brandon's statement to police that the plan to kill the victims was originally devised by Richard;

- Brandon's testimony that he took the victims by himself to the rear of the property and executed them;

- Brandon's testimony that Brandon participated in disposing of the bodies and fled to Mexico; and

- Appellant's not-guilty plea and out-of-court claims of innocence.

We disagree. None of the evidence cited by Appellant, much of which was also cited by the court of appeals, rebuts or negates the evidence that Appellant had the intent to kill when the victims were killed. Brandon's belief that he acted in self-defense in kidnapping the victims has nothing to do with Appellant's state of mind when the murders were committed. It bears only on Brandon's state of mind at the time of the kidnappings. Similarly, the evidence that there was no agreement at the time of the kidnappings and

---

[9] Appellant argues in his brief that Detective Guadalupe Gonzalez testified that Richard ordered Brandon to murder the victims, not Appellant. Appellant directs us to volume five of the reporter's record, but we can find no such testimony.

that Richard was first to come up with the idea to kill the victims is not directly germane to Appellant's state of mind. It merely stands for the proposition that there was no agreement at the time of the kidnappings to kill the victims and that Richard first conceived of the idea to kill them. We reach the same conclusion as to the evidence that Brandon took the victims to the rear of the property by himself and executed them, that Brandon participated in disposing of the bodies, and that Brandon fled to Mexico. Evidence that an accomplice or accomplices performed certain acts pertinent to the alleged crime does not show that Appellant did not have the intent to kill.

With respect to Appellant's reliance on his not-guilty plea and out-of-court assertions of innocence, those are not bases on which to submit a LIO instruction. A not-guilty plea is not evidence. It stands only for the proposition that Appellant formally denied committing the crime, [10] but submission of a LIO instruction turns on evidence. *Goad*, 354 S.W.3d at 448. Also, a defendant is not entitled to a LIO instruction based on evidence that the defendant committed no crime because, even though the evidence rebuts or negates an element of the greater offense, that evidence cannot show that the defendant is guilty of only a LIO. It shows that the defendant is guilty of no crime at all.

Appellant further argues that the SPA wants trial judges to determine which evidence is credible and which is not when deciding whether a LIO instruction should be

---

[10] *See* TEX. CODE CRIM. PROC. art. 1.15 (the State in a felony case when a defendant pleads guilty must "introduce evidence into the record showing the guilt of the defendant and said evidence shall be accepted by the court as the basis for its judgment and in no event shall a person charged be convicted upon his plea without sufficient evidence to support the same").

submitted. According to him, "[t]here were two versions of events presented by testimony and evidence. One version established capital murder while the other supported a lesser of murder or kidnapping." We do not read the SPA's brief to advocate for trial judges to weigh the credibility of the evidence. Rather, the SPA argues what could be rationally inferred from the evidence. According to it, two rational versions were *not* presented by the evidence.

A trial judge's job under the guilty-only prong is to consider the admitted evidence and determine whether it is sufficient to support submission of a LIO instruction. In assessing the sufficiency of the evidence for that purpose, a trial judge's duty is not much different than when it comes to other defensive issues. *See Shaw v. State*, 243 S.W.3d 647, 657–58 (Tex. Crim. App. 2007). A trial judge "must rely on [his] own judgment, formed in the light of [his] own common sense and experience" to determine whether the evidence and rational inferences that can be drawn therefrom justify submission of a LIO instruction. *Id.* at 658. In doing so, a trial judge does not usurp the fact finder's authority to weigh the evidence. He merely fulfills his duty to, upon request, determine if the lesser offense is "law applicable to the case." *See* TEX. CODE CRIM. PROC. art. 36.14; *see Tolbert v. State*, 306 S.W.3d 776, 781 (Tex. Crim. App. 2010) (stating that a "lesser-included offense was not 'applicable to the case' absent a request by the defense for its inclusion in the jury charge").

Appellant argues that even if the evidence does not show that he is guilty of only kidnapping or felony murder, it is enough that the evidence left some doubt about his intent to kill. He relies on *Beck v. Alabama*, 447 U.S. 625 (1980), a death-penalty case. In

*Beck*, the United States Supreme Court held part of Alabama's death-penalty statute unconstitutional. *Id.* at 643. The statute automatically imposed the death penalty upon conviction, and the statute precluded the submission of LIO instructions. *Id.* at 628. The United States Supreme Court held that the statute was unconstitutional because it "interject[ed] irrelevant considerations into the factfinding process . . . ." *Id.* at 642. According to the Supreme Court, some jurors might vote to acquit a defendant even though they believe he is guilty of capital murder because the defendant deserved to be punished, but not executed. *Id.* at 642–43. On the other hand, other jurors who doubt whether the defendant is guilty of capital murder, but believe that the defendant is guilty of a serious and violent offense, might vote to convict in the absence of a third option (i.e., to convict on a lesser offense). *Id.* at 642. The Supreme Court said these considerations "introduce a level of uncertainty and unreliability into the factfinding process" and that "[s]uch a risk cannot be tolerated in a case in which the defendant's life is at stake." *Id.* at 637.

Beck is inapposite for at least two reasons. First, this is not a death-penalty case, so the concerns about "death being different" and the unreliability of a verdict in a death-penalty case are not present here. Second, unlike the all-or-nothing approach of Alabama's death-penalty statute, Texas law allows for submission of LIO instructions in death-penalty cases. *See Segundo v. State*, 270 S.W.3d 79, 90–91 (Tex. Crim. App. 2008).

## CONCLUSION

We decide, as did Justice Wise in his dissenting opinion at the court of appeals, that the court of appeals misapplied the standard of review, and in the process, reached the wrong conclusion. Appellant was not entitled to the LIO instructions, and the court of appeals erred to conclude otherwise. We reverse the court of appeals' judgment and affirm the judgment of the trial court.

Delivered: April 19, 2023

Publish